527 A.2d 1311

**STATE of Maryland**

v.

**ONE 1985 FORD, etc.**

**No. 1517, Sept. Term, 1986.**

Court of Special Appeals of Maryland.

July 13, 1987.

Ann E. Singleton, Asst. Atty. Gen., J. Joseph Curran, Jr., Atty. Gen., Kurt L. Schmoke, State's Atty. and Jamey Hochberg, Asst. State's Atty. for Baltimore City, on brief, Baltimore, for appellant.

Arnold M. Zerwitz, Towson, for appellee.

Argued before MOYLAN, WEANT, GETTY, JAMES S. (Retired, specially assigned), JJ.

MOYLAN, Judge.

The State of Maryland, appellant, timely petitioned for the forfeiture of One 1985 Ford motor vehicle in the Circuit Court for Baltimore City. At the end of the State's case, without requiring Jean Marie Gluck, the registered owner of the motor vehicle, to put on any defense, the trial judge dismissed the petition. The State has taken a timely appeal and we reverse. We find our recent decision in the case of *State v. 1982 Plymouth*, 67 Md.App. 310, 507 A.2d 633 (1986), to be absolutely dispositive.

Joseph Gluck, the son of Jean Marie Gluck, was initially stopped, while driving the 1985 Ford in question, by Maryland Toll Facilities Police Officer Vaughn Cronauer on April 28, 1986. Officer Cronauer had been operating a stationary radar, monitoring northbound traffic on Interstate 695 (the Baltimore Beltway), when he observed the 1985 Ford travelling at 69 miles per hour, well in excess of the posted speed limit. When stopped, Joseph Gluck jumped out of the vehicle and ran over to Officer Cronauer's vehicle. Gluck's eyes were bloodshot and glazed; his speech was slurred; he swayed as he walked and his balance was unsteady. Officer Cronauer detected a strong odor of marijuana about his person. Gluck was given a field sobriety test and was neither able to recite the alphabet nor to count backwards from one hundred. He was placed under arrest.

On searching the vehicle, Officer Cronauer observed a partially burnt marijuana cigarette. A further search turned up a film canister containing a green leafy sub-

stance, which was analyzed to be marijuana. The officer also recovered five plastic bags containing 18.5 grams of what turned out to be marijuana. Each plastic bag of marijuana had an estimated street value of $25. Also recovered were a pack of plastic baggies of the type used to package marijuana, a pipe with marijuana residue, an ashtray with marijuana residue, hand-rolled cigarettes containing marijuana, and a pair of hemostats (tweezers) containing marijuana residue.

Detective Lloyd Caster, a seven-year veteran of the narcotics squad, was accepted as an expert witness. He offered the opinion that the marijuana in this case was possessed for purposes of sale.

At his criminal trial, Joseph Gluck was convicted of simple possession of marijuana and possession of paraphernalia. In terms of the continuing nature of his problem, Joseph Gluck told the judge, at time of sentencing, that he had been "having trouble with drugs since the time he was in junior high" and that he was intending to seek professional counselling for his problem.

In terms of the ultimate forfeiture hearing, *State v. 1982 Plymouth, supra,* pointed out unequivocally that the merits of the forfeiture issue are to be controlled by the provisions of Md.Ann.Code Art. 27, § 297(a) (1982 Repl.Vol. & 1986 Supp.). Narrowing the focus more tightly, subsection (a)(4) sets forth the circumstances under which a motor vehicle "shall be subject to forfeiture":

"All conveyances including aircraft, vehicles or vessels, which are used, or intended for use, to transport, or in any manner to facilitate the transportation, sale, receipt, possession, or concealment of property described in paragraph (1) or (2) of this subsection ..."

Of present pertinence, the key words are:

"All ...vehicles ...which are used ... in any manner to facilitate the transportation ...possession, or concealment of [controlled dangerous substances]...."

The hearing judge found, as a matter of fact, that Joseph Gluck was using the marijuana in the 1985 Ford. The hearing judge found, moreover, that Joseph Gluck had obtained the marijuana in Ocean City and brought it back as far as the Baltimore Beltway. The appellee cannot even controvert the fact that the 1985 Ford was used to facilitate the transportation, to facilitate the possession, and/or to facilitate the concealment of the marijuana—any one of which facilitations would be enough, by the clear terms of the statute, to mandate the forfeiture.

The forfeiture provisions of subsection (a)(4) establish three sets of circumstances exempting the owner from the forfeiture of the vehicle. The first two exemptions, not here pertinent, deal with 1) common carriers or owners of vehicles available for hire and 2) situations where the owner establishes that the vehicle was unlawfully in the possession of the person using the vehicle in an illicit manner. The third exemption, arguably available to Jean Marie Gluck in this case, is subsection (a)(4)(iii), which provides:

> "No conveyance shall be forfeited under the provisions of this section to the extent of the interest of any owner of the conveyance who neither knew nor should have known that the conveyance was used or was to be used in violation of this subtitle."

The legislative scheme is clear. We hold that once the illicit use of the vehicle is shown, the vehicle is presumptively subject to forfeiture and the burden of proof is upon the owner to demonstrate entitlement to an exemption from that presumptive forfeiture. The burden here was upon Jean Marie Gluck to show 1) that she did not know and 2) that there was no reason that she should have known that her son was using her automobile to transport, to possess, or to conceal drugs. The summary dismissal of the petition at the end of the State's case relieved Jean Marie Gluck of this burden of proof properly allocated to her. Jean Marie Gluck may well have been able to demonstrate her entitlement to an exemption from the forfeiture statute, but she could well have been subjected to cross-examination about

knowledge of her son's drug history and about awareness of his then-present condition with respect to drugs. The only allusion to Mrs. Gluck's knowledge or lack of knowledge was by her counsel in the course of requesting a directed verdict:

"If Your Honor please, clearly, the State has not presented any evidence of Jean Marie Gluck as anything but an innocent owner of a vehicle. Through the State's own exhibit, Your Honor, she is the registered owner, and by the State's own evidence, there is no evidence that Mr. Joseph Gluck owns any interest in this vehicle."

That statement by counsel, of course, is not evidence. Indeed, it betrays the mistaken belief that the burden is allocated to the State to prove knowledge rather than to the owner to prove lack of knowledge. The State, in this case, was prejudiced by being erroneously saddled with a burden of proof that should not rightfully have been placed upon it.

Indeed, our reading of the colloquy immediately preceding the granting of the motion to dismiss persuades us that the trial judge was diverted from the issue of the proper allocation of the burden of proof as to lack of knowledge by a very different misreading of the forfeiture law. It is clear that the judge believed that forfeiture in the first instance, before even getting to the secondary question of possible lack of knowledge by an innocent owner, required that the vehicle be used for the commercial distribution or sale of drugs and not simply for the personal consumption of drugs:

"The Court: May I be heard now?

Ms. Hochberg: Yes, sir.

The Court: People go to Ocean City and come back, and they carry 6 bags of salt water taffy.

Ms. Hochberg: That's correct.

The Court: The officer was not able to say whether that was bulk bought or sold. He couldn't identify it. In other words—

Ms. Hochberg: He said [there] was intent to distribute by his testimony.

The Court: Well, on cross-examination, my recollection was, it could have been bought or sold. In other words, he could have had it for distribution or he could have just bought it. Now, there is no evidence that this was in the process or on its way to being distributed. The amount in question doesn't prove to my mind that there was distribution. There was use in the car. There was residue in the car. There was a strong odor of marijuana plus the tweezers, whatever, the hemostats. So, this is consistent with the use and I don't think the State has met its burden.

Ms. Hochberg: Your Honor, if I may respond, please.

The Court: Yes.

Ms. Hochberg: First of all, under the A–4 section, we don't have to show intent to distribute. We only have to show possession, which clearly was possession. So, under A–4, 297 (A–4), we clearly fall within the statutory prohibition and I think that's all the State needs to do until the burden shifts to the defendant to show innocent ownership.

Second of all, Detective Caster clearly stated that based upon his experience it was intent to distribute because of the way it was packaged, because there was $25.00 that was written on it.

The court has accepted Detective Caster as an expert. His conclusion [was] that it was intent to distribute. Therefore, if Mr. Zerwitz wants to give him hypothetical questions, he can do that all day long. That still didn't change Detective Caster's testimony that it was intent to distribute.

In any event, I don't think at this juncture we need to show intent to distribute. All we need to show is possession. Clearly, we more than hurdled both possession and, I would submit, the intent to distribute hurdle.

**150** 

The Court: Motion is granted. I suggest that you take an appeal.

██ In requiring proof of sale or distribution, the trial judge was wrong as a matter of law. We held in *State v. 1982 Plymouth, supra,* that subsection (a)(4) "covers the waterfront," stating all of the necessary conditions for a forfeiture. We said there, at 67 Md.App. 314–315, 507 A.2d 633:

> "Subsection (a), subtitled 'Property subject to forfeiture,' is the only one remotely concerned with the necessary conditions for forfeiture. Barring exceptions not here pertinent, the use of a vehicle for the possession of drugs, standing alone, is enough.
>
> . . . . .
>
> No commercial aspect to the crime is required."

To forfeit an automobile where no commercial aspect of the drug traffic is involved may seem harsh. Indeed, it is harsh. As the Court of Appeals has pointed out repeatedly, however, the Legislature intended it to be harsh. In *State v. One 1967 Ford Mustang,* 266 Md. 275, 292 A.2d 64 (1972), the Court of Appeals was dealing with a situation where the owner of the forfeited vehicle was convicted of simple possession and sentenced to serve 90 days. He had been stopped for a routine traffic offense, when the state trooper "detected a strong odor of marijuana." Ultimately seized were two pipes and a vial containing what turned out to be marijuana. From that criminal conduct, clearly involving possession alone and without any intimation of any commercial aspect, the State petitioned for the forfeiture of the Ford Mustang. The trial judge there concluded, as we believe the trial judge here concluded, that the forfeiture of an automobile was perhaps an unduly harsh sanction for a marijuana violation. The trial judge there found it " 'neither consistent nor conceivable' " that the Legislature would place the judiciary in " 'an inflexible straitjacket.' " 266 Md. at 277, 292 A.2d 64. He ruled that "forfeiture is not automatically ordered when requested by the Attorney

General." *Id.* He found that the "loss of the car would work a severe hardship on Harris and his family." *Id.* In reversing the decision of the trial judge, Judge Digges reasoned, at 266 Md. 277–278, 292 A.2d 64:

"Once the basis of forfeiture under § 297 is established by a preponderance of the evidence, the remedy is prescribed by law—loss of the seized vehicle. And it is no more permissible to deny forfeiture under these circumstances than it would be to order a debtor to repay a reduced amount than is lawfully due because extenuating circumstances indicate that requiring the full sum to be paid would create great hardship. The statute's mandate must be obeyed for it is not a penalty imposed as part of the criminal punishment that can be invoked at the discretion of the trial judge. If the Legislature had desired to make this forfeiture discretionary it could have so provided." (Footnote omitted.)

The legislative scheme provides that the courts have little option but to apply the law with all its intended rigor. In a series of decisions from 1971 through 1973, the Court of Appeals explained that the forfeiture law was deliberately created as a stern measure. Those decisions, each of a unanimous Court, did not hesitate to apply the stern measure. Each was brought on appeal by the State. Each reversed a decision by the trial court to deny forfeiture. *Prince George's County v. Blue Bird Cab Co.*, 263 Md. 655, 284 A.2d 203 (1971); *State v. Greer*, 263 Md. 692, 284 A.2d 233 (1971); *State v. One 1967 Ford Mustang*, 266 Md. 275, 292 A.2d 64 (1972); *Prince George's County v. One (1) 1969 Opel*, 267 Md. 491, 298 A.2d 168 (1973). Indeed, before the present exemption for common carriers and agencies providing automobiles for hire was created, the titled owner of a taxicab suffered a forfeiture of that vehicle notwithstanding his total lack of knowledge as to the use to which the hired taxicab was being put. *Prince George's County v. Blue Bird Cab Co., supra.* The Court of Appeals held unequivocally that the innocence of the titled owner of the taxicab was of no consequence.

The source of the legal mistake is clear. Subsection 297(f) provides a set of "guidelines for the exercise of discretion by the seizing authority in deciding whether to recommend forfeiture to the State's Attorney." *State v. One 1967 Ford Mustang,* 266 Md. at 278 n. 3, 292 A.2d 64. As we made clear in *State v. 1982 Plymouth, supra,* "[t]hese clearly are not guidelines for the judge....The decision to seize and the decision to recommend forfeiture to the State's Attorney are not judicial decisions either in the first instance or by way of *de novo* determination." 67 Md.App. at 319. The Legislature has provided not only guidelines for the police when it comes to initial seizure but two levels of review of the initial decision. As we pointed out in *State v. 1982 Plymouth,* at 67 Md.App. 320, 507 A.2d 633:

> "The statutory scheme does not contemplate any second-guessing or *de novo* determination by the judge of 1) the policeman's decision to seize and to recommend forfeiture, 2) the chief law enforcement officer's decision to go forward with the forfeiture recommendation in writing, or 3) the State's Attorney's decision to petition for forfeiture. The petitioning process is, in its most fundamental nature, the business of the executive, not the judicial, branch of government."

Even with respect to those guidelines, directed at the policeman in the first instance and at the two legislatively established levels of review within the executive branch in the second instance, we note in passing that they are frequently misread. Subsection (f)(1) sets forth certain circumstances under which a vehicle shall be seized and forfeiture shall be recommended. Prominently included are situations in which there are indications of commercial drug trafficking. Bench and bar regularly misread this catalogue of situations mandating seizure and recommendation of forfeiture as the preclusion of seizure or forfeiture when those situations are not present. As we went to great pains to point out in *State v. 1982 Plymouth,* at 67 Md.App.

323–325, 507 A.2d 633, there are three bands within this total spectrum and subsection (f)(1) is but one of them:

"Subsection (f)(1) cannot be read except in conjunction with subsection (f)(2). The legislative scheme of the entire subsection (f) is to provide a list of clear 'do's'; a list of clear 'dont's'; and, implicitly, a residual list of 'maybe's.' It seems clear that the Legislature, through its guidelines, is saying to the police department, 'Where a commercial aspect is indicated, don't even contemplate forbearing to recommend forfeiture. Where, on the other hand, the true owner of the vehicle appears innocent of the use to which his car was put, don't press forward with forfeiture. In between these two polar positions, use your own judgment.'" (Footnote omitted).

The guidelines for seizure, in any event, are only for the benefit of the executive branch and are not subject to judicial review. (If it were otherwise, the facts by no means indicate that the decision of the officer to recommend forfeiture was erroneous. The fact that a subsequent criminal trial results only in a verdict of simple possession by no means establishes that the officer's determination was unreasonable from his vantage point.)

Before reaching the secondary issue of a possible exemption from presumptive forfeiture where the owner of the vehicle is without knowledge of the use to which it was put, the legislatively established forfeiture criteria of subsection (a)(4), directed at the judiciary to determine the merits of forfeiture, were satisfied. The criteria for the executive branch of government under subsection (f), establishing guidelines for the charging process, have nothing to do with the ultimate merits of the forfeiture decision itself.

With respect to the possible exemption from presumptive forfeiture, we repeat that the parent/owner in this case may well be able to establish her lack of knowledge as to the use to which her son was putting her automobile. She may be able to establish thereby her entitlement to the exemption from the otherwise harsh rigors of the forfeiture

**154**

law. The legislatively established scheme, however, requires that she be put to her proof in that regard.

JUDGMENT REVERSED; CASE REMANDED FOR FURTHER PROCEEDINGS; COSTS TO BE PAID BY APPELLEE.