635 A.2d 21

**ONE 1988 JEEP CHEROKEE VIN NO. 1JCMT7898JT159481**

v.

**The CITY OF SALISBURY.**

**No. 359, Sept. Term, 1993.**

Court of Special Appeals of Maryland.

Jan. 4, 1994.

George G. Strott, Jr. and Barbara R. Trader (Adkins, Potts & Smethurst, on the brief), Salisbury, for appellant.

R. Mark Nasteff, Robert A. Eaton, P.A., (Davis R. Ruark, State's Atty. for Wicomico County and Sampson G. Vincent, Asst. State's Atty. for Wicomico County, on the brief) Salisbury, for appellee.

Submitted before ALPERT, WENNER and FISCHER, JJ.

WENNER, Judge.

We shall here interpret the so-called "innocent owner" defense contained in Md.Code (1957, 1992 Repl.Vol.) Art. 27 § 297. In this appeal, appellant, Dr. Richard Long (Dr. Long), challenges an order of the Circuit Court for Wicomico County granting a Petition for Forfeiture filed by appellee, the City of Salisbury (City). On appeal, Dr. Long presents us with four questions:

1. Whether the trial court erred in granting the Petition for Forfeiture when the City of Salisbury failed to prove a nexus between the vehicle which had been used to facilitate the possession of illegal drugs and the illegal drugs.

2. Whether the trial court erred in admitting evidence that Appellant may have known of his son's prior drug use.

3. Whether the trial court erred in finding that possession of the Jeep Cherokee was sufficient to order forfeiture when the registered owner had no actual knowledge that the conveyance in question was to be used in violation of Article 27. § 297.

4. Whether the Order of Forfeiture of the Jeep Cherokee was a violation of the Appellant's constitutional right to protection from excessive punishment under the Eighth Amendment of the United States Constitution and Article 25 of the Maryland Declaration of Rights when the value of the forfeited property far exceeded the value of the contraband seized.

We shall answer Dr. Long's third question in the affirmative, and shall reverse the judgment of the circuit court.

## BACKGROUND

While driving Dr. Long's 1988 Jeep Cherokee (Cherokee), his son, Kevin, was stopped by Trooper David Owens of the Maryland State Police. Trooper Owens searched the Cherokee and found various drugs, including one Valium pill, two partially burned marijuana cigarettes, and a residue of white

powder contained in a pill crusher. Trooper Owens also found small quantities of prescription drugs, Torbutral and Zantac.

The City filed a Petition for Forfeiture of the Cherokee and Dr. Long responded, requesting that it be denied.

At a hearing held on February 8, 1992, Dr. Long testified that he had purchased the Cherokee for use in his veterinary practice, and had loaned it to Kevin for use in driving to and from his job in Ocean City. Dr. Long was out of state when the Cherokee was stopped, searched, and seized.

According to Dr. Long, he kept in the Cherokee various drugs and instruments associated with his profession. He said that Torbutral was an animal cough suppressant and that Zantac was a prescription medicine for Kevin's ulcer. Dr. Long also said that he was unaware that Kevin was using the Cherokee to transport controlled dangerous substances.

Dr. Long acknowledged that he was aware that Kevin had been convicted in August of 1990 of Driving Under the Influence.[1] Although the arresting officer testified that, following Kevin's arrest in August of 1990, Dr. Long had told him of Kevin's drug problem, Dr. Long had no recollection of the conversation. Nevertheless, Dr. Long testified at the hearing that he suspected that Kevin had removed some drugs from his veterinary clinic.

As we have mentioned, after considering all of the testimony, the trial court ordered the Cherokee forfeited.

## I.

In 1989, the General Assembly rewrote Maryland's forfeiture statute, Md.Code (1957, 1992 Repl.Vol.), Art. 27 § 297. 1989 Md.Laws, Ch. 285. Although many of its sections remained the same, some were deleted and several new sections were added.

---

1. Dr. Long denied knowing that the conviction was drug related; however, Trooper Owens testified that it was drug related.

The forfeiture statute now contains a section of definitions, § 297(a), as well as sections governing the forfeiture of real property, §§ 297(m) and (n). Section 297(r), entitled "Rights of Lienholder" was also added, as was § 297(s), entitled "Powers of Court."

In addition, the so called "Innocent Owner Defense," was significantly changed. In previous Art. 27 § 297, the innocent owner defense was contained in § 297(a)(4)(iii). It provided:

> No conveyance shall be forfeited under the provisions of this section to the extent of the interest of an owner of the conveyance who neither knew nor should have known that the conveyance was used or was to be used in violation of this subtitle.

We had occasion in *State v. One 1985 Ford,* 72 Md.App. 144, 527 A.2d 1311 (1987) to explain the operation of the innocent owner defense within the legislative scheme of Art. 27, § 297. In *One 1985 Ford,* the trial court had dismissed the State's petition for forfeiture after the State had presented its case. Writing for us, Judge Moylan explained that the dismissal was premature:

> We hold that once the illicit use of the vehicle is shown, the vehicle is presumptively subject to forfeiture and the burden of proof is upon the owner to demonstrate entitlement to an exception from that presumptive forfeiture.

*Id.* at 147, 527 A.2d 1311.

Judge Moylan emphasized that the burden of proving entitlement to an exception from the presumptive forfeiture is on the party claiming innocent ownership. Moreover Judge Moylan went on to say that a mother, whose son transported drugs in her car was required to show "(1) that she did not know and (2) that there was no reason that she should have known that her son was using her automobile to transport, to possess, or to conceal drugs." *Id.* We then held that the trial court erred in finding that the mother was an innocent owner without requiring her to so prove, and remanded the case to the trial court for further proceedings.

Perhaps in response to *One 1985 Ford,* revised Art. 27, § 297 explicitly sets forth the burden of proof explained by Judge Moylan, and contains other significant changes.

In previous Art. 27, § 297, the innocent owner defense varied depending on the type of property subject to forfeiture. If a motor vehicle was subject to forfeiture, an innocent owner could prevail if the owner "neither knew nor should have known that the conveyance was used or was to be used in violation of this subtitle." *See Supra* § 297(a)(4)(iii). If the property seized consisted of anything of value furnished, or intended to be furnished, in exchange for a controlled dangerous substance, the innocent owner could avoid forfeiture if the "act or omission" giving rise to forfeiture occurred "without the owner's knowledge or consent." § 297(a)(9).[2]

Whatever the reason for designating different standards for the forfeiture of different types of property, the General Assembly has now standardized the innocent owner defense by moving it to a section of its own:

> (c) *Property not subject to forfeiture.*—Property or an interest in property described under subsection (b)(4), (9), and (10) of this section may not be forfeited if the owner establishes by a preponderance of the evidence that the violation of this subheading was done without the owner's actual knowledge.

We note that, in addition to the organizational change, revised Art. 27, § 297, et seq., changed significantly the burden to be met by the owner in order to avoid forfeiture. In contrast to both sections of previous § 297, under new

---

**2.** Section 297(a)(9) is part of the paragraph entitled *Property Subject to Forfeiture* and appears in its entirety as follows:

Everything of value furnished, or intended to be furnished, in exchange for a controlled dangerous substance in violation of this subheading, all proceeds traceable to such an exchange, and all negotiable instruments and securities used, or intended to be used, to facilitate any violation of this subheading. However, property may not be forfeited under this paragraph, to the extent of the interest of any owner, by reason of any act or omission established by the owner to have been committed without the owner's knowledge or consent.

§ 297(c), the owner of certain property could have avoided forfeiture by proving that "the violation of this subheading was done without [his or her] *actual knowledge.*" § 297(c) (Emphasis added.) It is this change that leads us to our decision in the case at hand.

## II.

■ Notwithstanding new Art. 27, § 297(c), the problem of what evidence one must present in order to show that one lacked "actual knowledge," or what evidence the State must present in order to overcome an owner's claim that he or she lacked "actual knowledge" must still be determined. Dr. Long contends that he clearly met his burden of proving that he lacked actual knowledge that Kevin was illegally using the Cherokee. Pointing out that other jurisdictions have said that actual knowledge can be inferred from the circumstances, the City contends that the trial judge did not err in finding that Dr. Long had not met the burden of proving the innocent owner defense.

The legislative history of revised Art. 27, § 297 sheds little light on why the standard of proving knowledge was changed, or how it should be interpreted. Thus, "in our efforts to discover purpose, aim, or policy, we [shall] look to the words of the statute." *State v. One 1984 Toyota Truck,* 311 Md. 171, 181, 533 A.2d 659 (1987) *quoting Kaczorowski v. City of Baltimore,* 309 Md. 505, 513, 525 A.2d 628 (1987).

"Actual knowledge" is a subjective standard, requiring specific awareness. In contrast, an objective standard contemplates the knowledge of a reasonable person under similar circumstances, and is often phrased as whether or not one "should have known." [3] Because the owner has the burden of proof, § 297(c), it follows that proving lack of "actual" knowledge is a less burdensome task than proving that the owner "neither knew or *should have known.*"

---

**3.** See Judge Chasanow's concurring opinion in *State v. McCallum,* 321 Md. 451, 583 A.2d 250 (1991) for a thorough discussion of the different degrees of knowledge.

We recognize that former § 297(a)(4)(iii) contained the objective standard for proving the innocent owner defense. On the other hand, § 297(c) considerably eases the burden of proving the innocent owner defense. Thus, it appears to us that by enacting § 297(c) the General Assembly intended to provide additional protection for the interests of innocent owners.

New Art. 27, § 297(s) supports this view because it explicitly acknowledges the court's role in protecting innocent owners:

(s) *Powers of Court.*—In a proceeding under this section, a court may:

(1) Grant requests for mitigation or remission of forfeiture, or take any other action to protect the rights of innocent persons which is in the interest of justice and which is not inconsistent with the provisions of this section.

The addition of § 297(s) is significant. Former Art. 27, § 297 had been harshly applied, often at the expense of "innocent owners." *State v. 1982 Plymouth,* 67 Md.App. 310, 507 A.2d 633 (1986). In *Prince George's County v. Blue Bird Cab Co.,* 263 Md. 655, 284 A.2d 203 (1971), the Court of Appeals held that the innocence of the title owner of the vehicle was no defense, and in *State v. One 1967 Ford Mustang,* 266 Md. 275, 292 A.2d 64 (1972), the Court held that within the scheme of Art. 27, § 297 the judiciary had virtually no discretion to deny forfeiture.

In 1972, the General Assembly added § 297(a)(4)(iii) to include an innocent owner defense. *State v. One 1984 Toyota Truck, supra,* 311 Md. at 179, 533 A.2d 659. The wording of § 297(a)(4)(iii) remained largely the same, *see* § 297(a)(4)(iii), *supra,* until the 1989 revision of Art. 27, § 297, appearing, as we have said, further to protect innocent owners by requiring an innocent owner only to prove lack of "actual knowledge."

With this in mind, we shall now review the trial court's application of Art. 27, § 297.

## III.

The trial court first recognized that, in order to avoid forfeiture, the owner "must establish by a preponderance of the evidence that what occurred was done without his actual knowledge." The trial court then concluded:

> We here have a vehicle seized pursuant to a valid arrest on May 2nd of 1992. The *intervene* [sic] order says that he was in Georgia when this offense occurred, and that he had no actual knowledge of what had occurred. The evidence additionally indicates that the Doctor was aware that his son had a drug problem. There was a previous arrest in August of 1990. It's not disputed that he may have told the officer at that time that his son was having a drug problem.
>
> The items found in the vehicle were in the officer's description full. It was full of clothes, tools, boxes, cases of empty beer cans, and other personal property which indicates to the Court that the automobile was for his personal use and indicates exclusive possession in the son. I order forfeiture.

Although we accept the trial court's findings of fact, we fail to see how they led him to conclude that Dr. Long had failed to establish that Kevin had illegally used the Cherokee without the doctor's actual knowledge.[4] We have no doubt that Dr. Long failed to show lack of knowledge according to previous Art. 27, § 297, because the facts found by the trial court established that Dr. Long knew, or should have known, of Kevin's drug problem, and thus, "should have known" that Kevin was using the Cherokee to transport illegal drugs. Therefore, if § 297(a)(4)(iii) were still in effect, the trial court

---

4. In its decision, the trial court, in part, relied on its finding that the Cherokee was in Kevin's exclusive possession. In our view, this has nothing to do with whether Dr. Long actually knew that Kevin was transporting illegal drugs in the Cherokee. Rather, the trial court's finding suggests that Kevin owned the Cherokee. The trial court did not elaborate on the implication of this finding, but we note that Dr. Long is the "owner" of the Cherokee as defined in § 297(a):

> (9)(i) "Owner" means a person having a legitimate legal, equitable, or possessory interest in property.

would have been correct in ordering forfeiture of Dr. Long's Cherokee. As we have discussed at length, however, by changing "should have known" to "actual knowledge" in revising Art. 27, § 297 in 1989, the General Assembly has made it easier for an innocent owner to avoid forfeiture. Dr. Long testified at the forfeiture hearing that he did not actually know that Kevin was using the Cherokee to transport illegal drugs. Consequently, the trial court's finding of facts with respect to Dr. Long's knowledge of Kevin's drug problem fails to obviate Dr. Long's testimony, because they show only that Dr. Long *should have known* that Kevin was illegally using the Cherokee.[5] The trial court thus erred in ordering forfeiture of Dr. Long's Cherokee.

## IV.

The City feels that the General Assembly intended that Art. 27, § 297, be harshly applied and cites cases in support of its position. As Judge Adkins pointed out for the Court of Appeals in *State v. One Toyota Truck, supra* at 190, 533 A.2d 659, "we read the law as harshly as the General Assembly writes it; the 'innocent owner' defense is obviously intended to mitigate harshness." As we have discussed at length, the 1989 revision of Art. 27, § 297, particularly § 297(c), further protects "innocent owners." In ordering forfeiture of Dr. Long's Cherokee, the trial court applied the forfeiture statute

---

**5.** We shall not decide when and under what circumstances courts should find that persons claiming innocent ownership have failed to meet their burden of showing lack of actual knowledge. We note, however, that circumstances suggesting "willful blindness" or "deliberate ignorance" may indeed defeat an owner's claim of innocence. *See in general, State v. McCallum, supra,* (Chasanow, J., concurring); *Owens–Illinois v. Zenobia,* 325 Md. 420, 462 n. 23, 601 A.2d 633 (1992). *See also U.S. v. Ground Known as 2511 E. Fairmount Ave.,* 737 F.Supp. 878 (D.Md.1990) (Although they maintained that they did not know, claimants failed to prove that they lacked "actual knowledge" that their son had purchased certain properties with proceeds received from drug trafficking. The trial court found that the claimants knew that one property had been searched and narcotics found, had themselves been tied up by assailants who demanded money and drugs, and knew that their son had purchased a mobile home for $19,000 cash.)

686

more harshly than the General Assembly intended it to be applied.

**JUDGMENT REVERSED.**

**COSTS TO BE PAID BY APPELLEE.**