744

657 A.2d 825

ONE FORD MOTOR VEHICLE VIN # 1FACP41A8LFZ17570

v.

STATE of Maryland, et al.

No. 1333, Sept. Term, 1994.

Court of Special Appeals of Maryland.

May 3, 1995.

Joseph M. Gorvoy (Ferris Hansen & Gorvoy, P.C., on the brief), Greenbelt, for appellant.

Rebecca K. Brantley, Asst. State's Atty. for Charles County (Leonard C. Collins, Jr., State's Atty. for Charles County on the brief), La Plata, for appellee.

Argued before BISHOP, ALPERT and WENNER, JJ.

WENNER, Judge.

The genesis of this appeal is the forfeiture of a 1990 Ford Mustang that was seized by the Charles County Sheriff's Office following a drug arrest. After determining that the car was owned by Stephen Lane, the person arrested, rather than by Lane's sister, Erika Dyer, in whose name the car was titled, the Circuit Court for Charles County ordered the car to be forfeited to the State of Maryland. On appeal, we are presented with two questions:

1. Whether the trial court erred in finding that the claimant in a civil forfeiture proceeding was not the actual owner of an automobile which she had paid for, and which was registered and titled solely to her.

2. Whether the trial court erred in ordering forfeiture of an automobile, over the claimant's contention that such forfeiture would constitute an excessive fine violative of the eighth amendment, based solely on a traditional proportionality analysis, and without considering the nexus between the automobile and the illegal activity.

We shall answer "Yes" to the second question, reverse the judgment of the circuit court and remand to that court for further proceedings.

## FACTS

On 23 June 1993, two deputies of the Charles County Sheriff's Office arrested Stephen Lane near Lane's place of employment, after observing Lane tending two marijuana plants. The plants were growing in a wooded area behind the Pace warehouse. Pace was Lane's employer. Lane was on a lunch break when he was arrested. Lane used the Ford Mustang for transportation to and from work. As we have said, it is the ownership of the Ford Mustang that is the subject of this appeal. As we have also said, the Mustang was at all times registered only in the name of Lane's sister, Erika Dyer.

The State's first witness was Dorothy Pope, the salesperson who had sold the Mustang to Lane and his sister. According to Ms. Pope, Lane visited the dealership in September 1990, and expressed an interest in purchasing the Mustang. Although Lane was unable to finance the purchase, Lane's sister helped him to obtain financing. The names of both Lane and Ms. Dyer appear on the purchase order. According to Ms. Pope, although Ms. Dyer had the car registered only in her name, Lane said it was to be his car. Moreover, Lane paid $600 of the $1,000 downpayment, although, as the Mustang was titled in Ms. Dyer's name, she was able to obtain insurance for a lower premium. On cross-examination, Ms. Pope said that Ms. Dyer traded-in a car owned by her to cover the remaining downpayment.

The State's next witness was Deputy Anthony McGrath, one of the arresting officers. McGrath said that Lane admitted owning the Mustang, and that his sister had been involved only to obtain financing and insurance. Deputy McGrath went on to say that Lane admitted owning a corn cob pipe used for smoking marijuana, which was in the Mustang. After Lane consented to a search, the deputies found and seized the pipe. McGrath also said that Lane had not been observed transporting the marijuana plants, marijuana, or controlled dangerous substances of any type in the Mustang. The other arresting officer, Corporal William Winters, corroborated Deputy McGrath's testimony.

Lane testified that his sister owned the Mustang and that he neither owned nor had ever used the corn cob pipe. Lane said the pipe belonged to an acquaintance who had left it in the Mustang. Though admitting he had driven the Mustang to parties at which he smoked marijuana, Lane could not recall having smoked or transported marijuana in the car.[1]

---

1. Although we are unsure of its evidentiary value, we find State's exhibit # 11, identified by Lane particularly interesting. Exhibit # 11 is a photograph of a bumper sticker on the Mustang that Lane admitted having put there just prior to the forfeiture hearing. The message on the bumper sticker is: "JAIL: marijuana's only bad effect."

The State elicited from Lane that he lived with his father, where the Mustang was usually parked. Lane had both sets of keys for the Mustang, and said that he and his sister had initially intended to be co-owners, but that it had ultimately been registered solely in his sister's name. Lane went on to say that he was required to obtain his sister's permission to use the Mustang for anything other than transportation to and from work. Nevertheless, Lane admitted having used the Mustang on a number of occasions without first obtaining his sister's permission.

At the close of the State's case, Ms. Dyer moved for directed verdict, contending that the State had failed to rebut the presumption that she owned the Mustang and had shown no connection between Ms. Dyer and the marijuana plants or the corn cob pipe. The hearing judge denied the motion, saying, "I agree that there is no evidence to connect her with the marijuana but I do think that the State has presented sufficient evidence to go to the trier of fact on the issue of ownership and for that reason the motion is denied."

Lane was the first witness presented by the defense. After refuting Ms. Pope's account of the purchase of the Mustang, Lane gave his version of its purchase. According to Lane, his father, Ezra Lane, had loaned his sister sufficient funds to purchase the Mustang, and she was to repay him and permit Lane to use the Mustang for transportation to and from work. Lane denied paying anything more than the $600 toward the downpayment, and said that his sister had paid the insurance premiums. On cross-examination, Lane admitted having no insurance and said he did not believe his name was on Ms. Dyer's policy.

Ms. Dyer testified that, although she and her brother initially intended to be co-owners of the Mustang, it was titled solely in her name after Lane was unable to obtain financing. She said her father agreed to pay the balance of the car loan, and she agreed to repay him. Ms. Dyer said she had paid her father a total of $6,500 in cash and by check. Though asked repeatedly on cross-examination for proof of her payments,

Ms. Dyer said she had left all of her records at home. More confusing is the predicament in which Ms. Dyer found herself after trading in her car to buy the Mustang she would be unable to use, leaving herself without transportation.[2]

Lane's father was the final witness called for the defense. He clarified his role in the purchase of the Mustang. Mr. Lane said he was unaware of the Mustang until it had been purchased, and Ms. Dyer asked him to help her pay the car loan. Mr. Lane then paid the balance due on the loan and allowed Ms. Dyer to pay him, when possible. Contrary to Ms. Dyer's testimony, Mr. Lane said that Ms. Dyer had paid him approximately $1,500, rather than the $6,500 she claimed to have paid him. Mr. Lane testified that he had forgiven Ms. Dyer $5,000, which she said she had paid to her father.

In a written opinion, the hearing judge held that Lane was the actual owner of the Mustang, and that Lane had used the Mustang to facilitate tending his marijuana garden and possession of marijuana. Hence, the Mustang was declared forfeited to the State of Maryland and this appeal followed.

## DISCUSSION

### I.

Forfeitures and seizures are covered by Maryland Code (1957, 1992 Repl.Vol.), Art. 27 § 297, which provides in pertinent part:

---

**2.** At trial, the following occurred:

STATE'S ATTORNEY: And you said you bought this car for Steve and traded in your old car and that left you with no car that you owned other than this one according to you?

MS DYER: No Sir. As I told the judge my dad got me a Plymouth.

STATE'S ATTORNEY: He bought you one?

MS DYER: Yes.

STATE'S ATTORNEY: Why didn't you buy the car for yourself that you wouldn't use primarily?

MS DYER: I don't know, sir.

(b) Property subject to forfeiture.—The following shall be subject to forfeiture and no property right shall exist in them:

(1) All controlled dangerous substances which have been manufactured, distributed, dispensed, acquired, or possessed in violation of the provisions of this subheading;

(2) All raw materials, products and equipment of any kind which are used, or intended for use, in manufacturing, compounding, processing, delivering, importing, or exporting any controlled dangerous substance in violation of the provisions of this subheading;

\* \* \* \* \* \*

(4) All conveyances including aircraft, vehicles or vessels, which are used, or intended for use, to transport, or in any manner to facilitate the transportation, sale, receipt, possession, or concealment of property described in paragraph (1) or (2) of this subsection....

\* \* \* \* \* \*

(c) Property not subject to forfeiture.—Property or an interest in property described under subsection (b)(4), (9), and (10) of this section may not be forfeited if the owner establishes by a preponderance of the evidence that the violation of this subheading was done without the owner's actual knowledge.

It is undisputed that the Mustang is titled solely in Ms. Dyer's name, thus raising the presumption that she is its owner. Relying on *Liberty Co. v. American Co.*, 220 Md. 497, 154 A.2d 826 (1959), however, the hearing judge concluded that the State had rebutted that presumption, saying in his Opinion:

From the evidence presented, the Court finds that the State has overcome the presumption in favor of Erika Dyer and shown by clear and convincing evidence that Stephen Lane is the actual owner of the 1990 Ford Mustang which is the subject of this forfeiture proceeding. While the documentary evidence indicates that Erika Dyer is the owner of the car on paper, the remainder of the evidence, including

Mrs. Dyer's admitted misrepresentations to her insurance company, indicate that the *actual owner* of the car is Stephen Lane. While the testimony is unclear as to who actually paid for the car, it was purchased for Stephen Lane. The purchase was initiated by Mr. Lane and for all practical purposes he has had exclusive use and possession of the car since its purchase. Furthermore, the Court is unpersuaded by Mrs. Dyer's testimony concerning her equitable interest in the vehicle and finds that she has no equitable interest therein.

According to appellant, the hearing judge is wrong.

■ When a vehicle's ownership is at issue, whether the presumption of its ownership has been rebutted is "clearly a question for the trier of the facts to decide," *Liberty Co. v. American Co.*, supra at 500, 154 A.2d 826, and its decision will not be disturbed on appeal unless it is clearly erroneous. In reviewing a decision of the trier of facts, we "must consider [all of the] evidence produced at the trial in a light most favorable to the prevailing party and if substantial evidence was presented to support the [trier of facts] determination, it is not clearly erroneous and cannot be disturbed." *U.S. Money v. Kinnamon*, 326 Md. 141, 149, 604 A.2d 64 (1992) (quoting *Ryan v. Thurston*, 276 Md. 390, 392, 347 A.2d 834 (1975)).

■ Article 27 § 297(a)(9) defines an "owner" as any "person having a legitimate legal, equitable, or possessory interest in the property," including a co-owner. Thus, a seized vehicle may have more than one "owner." In other words, a claimant need not be the sole owner in order to prevail. Rather, if an innocent owner can satisfy the court that he/she has an interest in the property, it should not be forfeited. For example, a tenant by the entirety is an "actual owner." *State v. One 1984 Toyota Truck*, 311 Md. 171, 533 A.2d 659 (1987). Although, as we have said, the purpose of forfeiture is to discourage the use, production and trafficking of drugs, *Ewachiw v. Director of Fin.*, 70 Md.App. 58, 519 A.2d 1327 (1987),

the legislature has seen fit to exclude innocent owners from this harsh remedy.

■ Appellant believes. that *One 1988 Jeep Cherokee VIN No. 1JCMT7898JT159481 v. City of Salisbury,* 98 Md.App. 676, 677, 635 A.2d 21 (1994), is dispositive. The question of ownership, however, was not raised in *One 1988 Jeep Cherokee.* The issue there was whether the Cherokee's owner knew of his son's drug use. In a footnote, we pointed out that the trial court had erred in relying on its finding that the Cherokee was in his son's exclusive possession. In our view, this had nothing to do with whether the father actually knew of his son's transporting illegal drugs in the Cherokee. *Id.* at 684, n. 4, 635 A.2d 21. Contrary to appellant's belief, the situation in *One 1988 Jeep Cherokee* is vastly different from that presented in the case at hand. In *One 1988 Jeep Cherokee,* despite the fact that the owner had purchased and used the Cherokee for his veterinary practice, it was in his son's exclusive possession at the time of its seizure, because its owner was on vacation and had loaned the Cherokee to his son for transportation to and from his son's summer job.

In the case *sub judice,* the Mustang was in Lane's exclusive possession from the time of its purchase until it was seized. As we have noted, the Mustang was parked where Lane lived, and Lane had both sets of keys. Moreover, the testimony confirmed that this had always been the arrangement. According to Lane, the only restriction on his use of the Mustang was that he had to obtain his sister's permission before using it for pleasure, although Lane admitted having used it on occasion without obtaining her permission. Moreover, the arresting officers testified that Lane had said several times that the Mustang was his. In any event, the hearing judge chose to believe Ms. Pope's testimony and the arresting officers, concluding that Lane owned the Mustang.

Unfortunately, the family arrangement seems to have caused Lane's father to have suffered the greatest financial loss. He provided Lane with money to purchase the Mustang, and Lane's sister provided insurance coverage for the car. In

doing so, Lane's sister sacrificed her own transportation. Even though Ms. Dyer claimed that she and her brother initially intended to be co-owners of the Mustang, it was titled solely in her name. Moreover, Lane's father paid the car loan less than two months after the purchase.[3] According to Ms. Dyer, she agreed to reimburse her father when able to do so, although she was unable to document this agreement at the forfeiture hearing. We remind Ms. Dyer that the claimant has the burden of proving the claimant is an "innocent owner." *State v. One Toyota Truck*, 311 Md. at 183–184, 533 A.2d 659.

In sum, we conclude that the hearing judge's conclusion that Lane was the owner of the Mustang was supported by more than substantial evidence. Thus, it was not clearly erroneous.

## II.

Appellants also contend that forfeiture of the Mustang violated appellants' Eighth Amendment right to be free of excessive fines. Even though forfeitures are civil in nature, and are actions *in rem*, the United States Supreme Court recently declared in *Austin v. United States*, —— U.S. ——, 113 S.Ct. 2801, 125 L.Ed.2d 488 (1993), that a forfeiture is a "payment to a sovereign as punishment for some offense," and is thus subject to Eighth Amendment scrutiny. Building upon *Austin*, the Fourth Circuit Court of Appeals articulated in *United States v. Chandler*, 36 F.3d 358 (4th Cir.1994),[4] a three-prong instrumentality test for determining whether a civil forfeiture is excessive. The Fourth Circuit began by reviewing the history of forfeiture cases and, quoting from Judge Scalia's concurring opinion in *Austin, supra*, held, in

---

**3.** We note that Lane's father is not involved, either below or on appeal, even though he has suffered the greatest financial loss. Consequently, we need not discuss whether Lane's father possessed any interest in the Mustang.

**4.** In *Chandler*, the Court of Appeals considered a civil forfeiture brought under the federal forfeitures statute, 21 U.S.C. § 881, which is similar to Maryland's forfeitures statute, Md.Code (1957, 1992 Repl.Vol.) Art. 27, § 297.

determining excessiveness of an *in rem* forfeiture under the Eighth Amendment

> a court must apply a three-part instrumentality test that considers (1) the nexus between the offense and the property and the extent of the property's role in the offense, (2) the role and culpability of the owner, and (3) the possibility of separating offending property that can readily be separated from the remainder.

*Id.* at 365. The Court also posited the following factors that may be considered:

> (1) whether the use of the property in the offense was deliberate and planned or merely incidental and fortuitous; (2) whether the property was important to the success of the illegal activity; (3) the time during which the property was illegally used and the spacial extent of its use; (4) whether its illegal use was an isolated event or had been repeated; and (5) whether the purpose of acquiring, maintaining or using the property was to carry out the offense.

*Id.*

We believe that an instrumentality test is the appropriate test to be applied in forfeiture cases, it being more consistent with Maryland's case law on forfeitures than a proportionality test. Moreover, as the Fourth Circuit noted in *Chandler,* "the principle of proportionality in the Eighth Amendment has been associated with the Cruel and Unusual Punishment Clause, rather than the Excessive Fines Clause." *Id.*

It is apparent in the case *sub judice* that the hearing judge applied the proportionality test in determining whether the forfeiture was excessive. In his Opinion and Order, he said:

> With regard to the Eighth Amendment argument, the parties have stipulated that the fair market value of the vehicle is $4,800.00. The Claimant has argued that the State has shown that the vehicle was used to transport the pipe, and that the maximum penalties for possession of paraphernalia and possession of marijuana are $500.00 and

$1,000.00, respectively. Therefore, the Claimant argues that forfeiture is excessive as the car is worth more than the potential criminal fines which could be imposed on Mr. Lane. However, Mr. Lane was arrested for manufacture of marijuana, which under Article 27, Section 286, is subject to a $15,000.00 fine. Evidence was also produced which indicated that Mr. Lane could have been found guilty of maintaining a common nuisance which is also subject to a $15,000.00 fine. Finally, in addition to the incident of possession which on the date of the arrest, there was testimony concerning additional instances of possession which occurred between the date the car was purchased and the date of the seizure. Therefore, the Court concludes that the potential fines which could have been imposed on Mr. Lane far exceed the stipulated value of the vehicle, and forfeiture is not excessive in this instance as it falls within the legislatively approved penalty for Mr. Lane's conduct.

Conspicuously absent from the hearing judge's Opinion and Order is an analysis of the nexus between the Mustang and the criminal activities. As we have said, forfeiture is an action *in rem*. It is an action against the property involved in some criminal activity. Thus, the hearing judge erred in basing his decision upon the respective values of the Mustang and the maximum fines to which Lane was exposed. Accordingly, we shall remand the matter to the Circuit Court for Charles County for further proceedings consistent with this opinion.

**JUDGMENT OF THE CIRCUIT COURT REVERSED. CASE REMANDED FOR FURTHER PROCEEDINGS CONSISTENT WITH THIS OPINION.**

**COSTS TO BE PAID BY APPELLEE.**