507 A.2d 633

**STATE of Maryland**

v.

**ONE MOTOR VEHICLE TO WIT: 1982 PLYMOUTH,
SERIAL NO. JP3BE4439CU404899.**

No. 873, Sept. Term, 1985.

Court of Special Appeals of Maryland.

May 7, 1986.

Ann E. Singleton, Asst. Atty. Gen. (Stephen H. Sachs, Atty. Gen., Kurt L. Schmoke, State's Atty. for Baltimore City and Evelyn O.A. Darden, Asst. State's Atty., for Baltimore City on brief), Baltimore, for appellant.

No Brief or Appearance by appellee's counsel.

Argued before MOYLAN, WEANT and KARWACKI, JJ.

MOYLAN, Judge.

The ancient common law of *deodand*[1] has been for most crimes relegated to the dustbin of history. It remains, however, an effective weapon in society's arsenal against the use of and traffic in illicit drugs. Under the subheading "Health—Controlled Dangerous Substances," §§ 276 through 302 of Article 27 spell out the various provisions of law available to combat the use of contraband drugs. Section 297 specifically deals with the forfeiture of property to the State. Narrowing the focus more tightly, subsection

---

1. The word *deodand* comes from the Latin phrase *Deo dandum*—"It should be forfeited to God." It was an early common law notion that any property which served, advertently or inadvertently on the part of its user, as an instrumentality of crime was possessed by evil and should be forfeited to the ecclesiastical authorities for the exorcising of the malign presence. With the Disestablishment of 1536, that which had once been forfeited to God was thereafter forfeited to the King. With American independence in 1776, that which had once been forfeited to the King was thereafter forfeited to the State.

An evolution has taken place with respect to the purpose of forfeiture as well as with respect to the recipients of the forfeiture. Though exorcism is no longer in vogue as an object of official policy, forfeiture has instead been deemed a stinging economic sanction against certain forms of criminal activity. "New wine in old bottles."

(a)(4) sets forth the circumstances under which a motor vehicle "shall be subject to forfeiture":

"(4) All conveyances including aircraft, vehicles or vessels, which are used, or intended for use, to transport, or in any manner to facilitate the transportation, sale, receipt, possession, or concealment of property described in paragraph (1) or (2) of this subsection. . . ."

Of present pertinence, the key words are:

"(4) All . . . vehicles . . . which are used . . . in any manner to facilitate the . . . possession, or concealment of [controlled dangerous substances]."

The issue before us is that of whether a further subsection of § 297—subsection (f), "Motor Vehicles—Standards for seizure"—is a modification, by way of limitation, on subsection (a)(4)'s forfeiture conditions or whether subsection (f) is rather a set of "guidelines" to the police to assist them in deciding when to seize a vehicle and to recommend forfeiture to the State's Attorney. For reasons to be discussed, we hold the latter to be the case. Even in that context, there remains an issue of what standard of review, if any, the judge at a forfeiture proceeding shall employ to determine whether the policeman properly followed the guidelines provided by the statute.

As we turn to the facts of the case, it is beyond dispute that the 1982 Plymouth in question was used, at the very least, for the possession and concealment of marijuana, if not, indeed, for the transportation, sale, or receipt of marijuana. On February 24, 1985, Officer Hicks, of the Northern District Drug Enforcement Unit, was on patrol, with two other officers, in an unmarked vehicle. They observed the Plymouth parked on the north side of the 1600 block of Sulgrave Avenue. The Plymouth was occupied by two persons: Laura Blasetti (the registered owner), in the driver's seat; and a male, in the front passenger seat. The officers parked their vehicle approximately 20 to 30 feet behind the Plymouth. Aided by the car's interior lights and

by street lights in the vicinity, the officers "could see very vividly through the rear window of the [Plymouth]."

Based on his observation of the occupants, Officer Hicks "believed there might be a narcotics transaction or some kind of narcotics violation possibly taking place." He and one of the other officers approached the Plymouth. They saw Laura Blasetti hand the male a white, hand-rolled cigarette. When the two officers identified themselves, Ms. Blasetti attempted to place the cigarette into her purse, which was located between the two seats. Officer Hicks recovered the cigarette. Based upon his experience, he believed it to contain marijuana.

The search of the vehicle produced a large zip-lock freezer bag containing a "plant material," which later analysis showed to be 213.6 grams of marijuana. The bag was located on a shelf underneath the glove compartment. In Officer Hick's expert opinion, the large amount of marijuana indicated strongly that it was not for personal consumption but for commercial sale.

After Officer Hicks seized the vehicle and recommended forfeiture to the State's Attorney, the State, on April 4, 1985, filed in the Circuit Court for Baltimore City a Petition for Forfeiture of the Plymouth. Both Laura Blasetti, the registered owner, and the Equitable Bank, N.A., the registered lienholder, filed an answer. At the forfeiture hearing held on June 13, 1985, however, Equitable Bank did not participate.[2]

The hearing judge ultimately superimposed upon the sufficient conditions for forfeiture unequivocally recited by subsection (a)(4) the additional condition that at least one of the criteria spelled out in subsection (f)'s "guidelines" be satisfied as well. He looked, clearly not by way of any due process review of the propriety of Officer Hicks's pretrial conduct (the judge had earlier denied Ms. Blasetti's Motion

---

2. As we find to be frequently true in forfeiture cases involving narcotics, neither Ms. Blasetti nor anyone else is opposing the State's appeal. There has been neither argument nor brief by the appellee.

to Dismiss in that regard), at all of the substantive evidence "as the fact finder." His stated purpose was to determine whether the State had shown "by a preponderance of the evidence that there is a cause of action." As the ultimate fact finder on the substantive issue, the judge found:

"I find as a fact, based upon the circumstances and notwithstanding the large amount of marijuana found in the car, namely, 213.6 grams, I find as a fact that under these circumstances no sale was contemplated. I also find, and I do not think it is contested, that none of the other criteria in Subsection F of Section 297 of Article 27 is satisfied. I find as a fact that a distribution of marijuana did take place in that vehicle on that night in question from the Defendant to the passenger, the Defendant being the owner of the vehicle; however, I find as a fact that that distribution was not a sale. It was just a gratuitous transfer.

... It's my view, in reading the Statute, that in order for a vehicle to be subject to forfeiture, then at least one of the criteria in Subsection F must be satisfied, and I find that none of the criteria in Subsection F have been satisfied...."

█ We hold that the judge's interpretation of the substantive law as to forfeiture was incorrect as a matter of law. In stating the necessary conditions for a forfeiture, subsection (a)(4) "covers the waterfront." The overall scheme of § 297 makes that clear. Its thirteen lettered subsections—(a) through (m)—each bears its own descriptive subtitle. Subsection (a), subtitled "Property subject to forfeiture," is the only one remotely concerned with the necessary conditions for forfeiture. Barring exceptions not here pertinent, the use of a vehicle for the possession of drugs, standing alone, is enough. The judge found that condition to have been satisfied:

"I find as a fact that a distribution of marijuana did take place in that vehicle on that night in question from the

Defendant to the passenger, the Defendant being the owner of the vehicle; ..."

No commercial aspect to the crime is required.

The result may seem harsh. The Legislature, however, intended it to be harsh. It provided, moreover, that the courts would have little option but to apply the law with all of its intended rigor. In a series of decisions from 1971 through 1973, the Court of Appeals explained that the forfeiture law was deliberately created as a stern measure. Those decisions, each by a unanimous Court, did not hesitate to apply the stern measure. Each was brought on appeal by the State. Each reversed a decision by the trial court to deny forfeiture. *Prince George's County v. Blue Bird Cab Co.*, 263 Md. 655, 284 A.2d 203 (1971); *State v. Greer*, 263 Md. 692, 284 A.2d 233 (1971); *State v. One 1967 Ford Mustang*, 266 Md. 275, 292 A.2d 64 (1972); *Prince George's County v. One 1969 Opel*, 267 Md. 491, 298 A.2d 168 (1973).

In *Prince George's County v. Blue Bird Cab Co., supra,* the Court of Appeals held unequivocally that the innocence of the title owner of the taxicab is of no consequence. In holding that the trial judge had no alternative but to order the forfeiture, Judge Digges concluded for the Court, at 263 Md. 662, 284 A.2d 203:

"We agree that in some ways this is a harsh law; however, it is within the Legislature's power to decide whether such a forfeiture provision is desirable. Its purpose is to attempt not only to curtail drug traffic in this state, but to discourage such a blight from continuing in the future. Historically, decisive action has been required to prevent any plague from spreading. In the present case the Legislature has clearly indicated its purpose for this act. It is to control the proliferation of dangerous drugs in our society and it is a noble purpose, but an arduous task. The measures that have been taken are not out of step with the great weight of authority."

In *State v. Greer, supra,* the return of her Chevy II was sought by an innocent mother, whose teenaged son had been charged with but not yet convicted of having sold marijuana to an undercover policeman from the Chevy II. In reversing on three separate grounds the trial judge's decision to release the automobile to the mother, the Court of Appeals pointed out, at 263 Md. 694, 284 A.2d 233, that "it is of little significance whether there is a criminal conviction" and that "[i]n the same vein the innocence of the owner of the vehicle is no defense."

In *Prince George's County v. One 1969 Opel, supra,* a trial judge in Prince George's County had declared a predecessor forfeiture law to be unconstitutional because it failed to provide adequate criteria or guidelines for the police and for the State's Attorneys in forfeiture situations. The chancellor had condemned the predecessor law in the following terms:

" '[T]he Legislature has, by empowering local authorities to exercise discretion, indicated that it is not its wish that all vehicles, not subject to the stated exceptions, be forfeited; and it has given *no* indication of what criteria should be employed. Was it the Legislature's wish that Mr. Marshall's standard of 'absolute innocence' of the owner of the vehicle be used or would the Legislature prefer the Prince George's County Police Departments' guidelines, whatever they might be? There is no way of knowing the answer.' " (Emphasis in original).

Quoted at 267 Md. 493–494, 298 A.2d 168. In reversing that determination, the Court of Appeals, speaking through Judge McWilliams, noted that the replacement statute, essentially the present law, does now provide some guidelines for the police and for the State's Attorney. The Court ruled, however, that the lack of guidelines and standards in the predecessor statute did not in any way render that statute unconstitutional. It quoted, at 267 Md. 499, 298 A.2d 168, with approval, from *Pressman v. Barnes,* 209 Md. 544, 555, 121 A.2d 816 (1955):

" 'The modern tendency of the courts is toward greater liberality in permitting grants of discretion to administrative officials in order to facilitate the administration of the laws as the complexity of governmental and economic conditions increases.' "

It is, however, the decision of Judge Digges for the Court of Appeals in *State v. One 1967 Ford Mustang, supra,* that is absolutely foreclosing on the effort of the trial judge to deny forfeiture in this case. The trial judge there sought, by way of exercising his discretion, to do what the trial judge did here, by adding a condition to the forfeiture requirements. In that case, the owner of the Ford Mustang was simply driving on the John F. Kennedy Memorial Highway when he was stopped by a Maryland State Trooper. In standing at the window of the Mustang, the trooper "detected a strong odor of marijuana." He subsequently seized two pipes and a vial containing what turned out to be marijuana. The owner was convicted of simple possession and sentenced to serve 90 days. From that criminal conduct, clearly involving possession alone and without any intimation of any commercial aspect, the State petitioned for the forfeiture of the Ford Mustang.

The trial judge there concluded, as we believe the trial judge here concluded, that the forfeiture of an automobile was perhaps an overly harsh sanction for a marijuana violation. The trial judge there found it " 'neither consistent nor conceivable' that the legislature would place the judiciary in 'an inflexible strait jacket.' " 266 Md. at 277, 292 A.2d 64. He could not believe that the Legislature would "remove the 'power and ability to exercise discretion and make an intelligent equitable consideration and disposition according to the extent of the wrong and the degree of culpability.' " *Id.* He ruled that "forfeiture is not automatically ordered when requested by the Attorney General. *Id.* He found that the "loss of the car would work a severe hardship on Harris and his family...." *Id.* The trial judge exercised his discretion to deny the forfeiture. In reversing, the Court of Appeals surveyed the federal and state

law nationally and concluded, "we have been unable to find a case holding that, in the absence of statutory permission, discretion is vested in the judiciary to deny forfeiture." 266 Md. at 279, 292 A.2d 64. In looking more directly to the legislative intent behind the Maryland law, Judge Digges held, at 266 Md. 277–278, 292 A.2d 64:

> "Once the basis of forfeiture under § 297 is established by a preponderance of the evidence, the remedy is prescribed by law—loss of the seized vehicle. And it is no more permissible to deny forfeiture under these circumstances than it would be to order a debtor to repay a reduced amount than is lawfully due because extenuating circumstances indicate that requiring the full sum to be paid would create great hardship. The statute's mandate must be obeyed for it is not a penalty imposed as part of the criminal punishment that can be invoked at the discretion of the trial judge. If the Legislature had desired to make this forfeiture discretionary it could have so provided. . . .
>
> Under the Controlled Dangerous Substances Act the duties and powers of the courts are narrowly limited in forfeiture proceedings. Once the seizing authority decides to seek forfeiture, the court's only responsibilities are to require proof that the vehicle seized was 'used, or intended for use, to transport, or in any manner to facilitate the transportation, sale, receipt, possession, or concealment of [controlled dangerous substances]'; determine that no statutory exceptions are applicable; and insure the adherence to due process requirements." [3] (Citations omitted).

The trial judge here may not do indirectly, by a legal ruling, what the trial judge there could not do directly, by exercising his discretion.

---

3. Subsections (h) through (m) of § 297 set forth elaborate procedural requirements for the forfeiture petition, the required notice, the decision to forfeit itself, and the post-hearing procedures to be followed in disposing of the forfeited property. These are the "due process requirements" referred to by Judge Digges.

If not an additional set of preconditions for forfeiture, what then is subsection (f)? It is what its subtitle clearly states: "Motor vehicles—Standards for seizure." Three such standards are spelled out. None of them deals in any way with the ultimate forfeiture itself. They refer rather to the antecedent steps of 1) seizing the vehicle in the first instance and 2) recommending forfeiture to the State's Attorney. As an internal examination of them readily reveals, they are directed to police officials. Indeed, in referring to subsection (f), an addition to the law taking effect two days prior to the decision in that case, Judge Digges in *State v. One 1967 Ford Mustang, supra*, described the new subsection as:

"Provid[ing] guidelines for the exercise of discretion by the seizing authority in deciding whether to recommend forfeiture to the State's Attorney."

266 Md. at 278, n. 3, 292 A.2d 64. These clearly are not guidelines for the judge. In the first place, the judge is not "the seizing authority." It is furthermore clear that it is not the judge who will be "deciding whether to recommend forfeiture to the State's Attorney." The decision to seize and the decision to recommend forfeiture to the State's Attorney are not judicial decisions either in the first instance or by way of *de novo* determination.

The overall scheme of subsection (f), and subsections (g) and (h) as well, is clear. After providing some guidelines for when a policeman should seize a vehicle and recommend its forfeiture and some guidelines for when a policeman should not seize a vehicle or recommend its forfeiture, the statute provides safeguards upon the exercise of that discretion by establishing two levels of review within the executive branch of government. After setting out both the affirmative and negative standards themselves in subsection (f)(1) and (2), (f)(3) goes on to provide an initial review by "the chief law-enforcement officer" of the concerned police department:

"(3) Forfeiture of the motor vehicle used in violation of this subtitle shall be recommended to the State's Attor-

ney only after the chief law-enforcement officer of the police department, bureau, or force that seized the motor vehicle has determined from the records of the Motor Vehicle Administration the names and addresses of all registered owners and secured parties as defined in the Code, has personally reviewed the facts and circumstances of the seizure and has personally determined, according to the above guidelines, that forfeiture is warranted and so represents in writing to the appropriate State's attorney."

Subsections (g) and (h) both deal with the power of the State's Attorney to review the decision made by the police department, to follow it, or to override it if the State's Attorney deems that course appropriate.

The statutory scheme does not contemplate any second-guessing or *de novo* determination by the judge of 1) the policeman's decision to seize and to recommend forfeiture, 2) the chief law enforcement officer's decision to go forward with the forfeiture recommendation in writing, or 3) the State's Attorney's decision to petition for forfeiture. The petitioning process is, in its most fundamental nature, the business of the executive, not the judicial, branch of government.

Even if we were to assume, however, that the trial judge's decision to deny forfeiture in this case rested not upon what he perceived to be the substantive merits of forfeiture but rather upon his determination that Officer Hicks failed to satisfy the standards of subsection (f), that decision still could not be affirmed. Subsection (f)(1) mandates that a vehicle *shall* be seized and forfeiture *shall* be recommended to the State's Attorney under certain conditions:

"(1) A motor vehicle used in violation of this section shall be seized and forfeiture recommended to the State's attorney when:

(i) Controlled dangerous substances in any quantity are sold or attempted to be sold in violation of this subtitle;

(ii) Although the violator has not sold or attempted to sell controlled dangerous substances in violation of this subtitle, an amount of such substances or paraphernalia is located which would reasonably indicate that sale is contemplated by the violator.

(iii) The total circumstances of the case dictate that seizure and forfeiture is justified; these circumstances would include such factors as the following:

(a) The possession of controlled dangerous substances;

(b) An extensive criminal record of the violator;

(c) A previous conviction of the violator for a controlled dangerous substances violation;

(d) Corroborated information is developed indicating that the violator is or was recently a seller, or frequently associates with individuals known to be distributors of illegal controlled dangerous substances or paraphernalia;

(e) Circumstances of the arrest;

(f) The manner in which the vehicle was being used."

■ Subsection (f)(1)(ii) clearly rendered the decision of Officer Hicks reasonable. From the large quantity of marijuana seized, 213.6 grams, Officer Hicks concluded that this was "an amount ... which would reasonably indicate that sale is contemplated." Indeed, in denying Ms. Blasetti's motion to dismiss the petition, the hearing judge concluded that the State "conceivably could satisfy these standards set forth in Subsection [ (f)(1)(ii) ] which says that although there has been no sale or attempted sale, the amount of the CDS is in such amount as would reasonably indicate that sale is contemplated." Accordingly, the court could not "say, as a matter of law, that 213.6 grams of marijuana is not an amount that would reasonably indicate that sale is contemplated by the owner of the vehicle."

If the trial judge could not say as a matter of law (and he did not) that Officer Hicks was unreasonable in his determination that a sale was contemplated, the trial judge could, as a procedural matter, only override the officer's determination by making a *de novo* determination himself. Aside

from the inappropriateness of having the judge make a *de novo* determination as to matters which are already *faits accomplis* (the decision to seize or not to seize was no longer "up for grabs;" nor was the decision to recommend or not to recommend forfeiture to the State's Attorney), the judge's decision in that regard, if made *de novo*, may well have been clearly erroneous.

If a forfeiture hearing judge were, indeed, permitted to make a *de novo* determination of that which had already been decided on the street, in the police commissioner's office, or in the State's Attorney's office, the interesting question would arise of whether the appellate court, in its turn, is also permitted to make a *de novo* determination. Were we making the *de novo* determination here, we would conclude that the officer's initial determination with respect to contemplated sale was far more accurate than the hearing judge's subsequent determination. May third-guessing giveth back what second-guessing taketh away? Where does deference begin and where does it end?

If the judge arguably based his ultimate determination not to forfeit upon a due process review of Officer Hicks's antecedent behavior, that review was thrice flawed. In addition to improperly second-guessing a determination made by the executive branch (and, arguably, being clearly erroneous in the course of that second-guessing), the court would have failed to consider the other factors spelled out in subsection (f)(1)(iii). Even in the absence of sale or contemplated sale, the circumstances may dictate seizure and a recommendation of forfeiture. Among the factors to be considered are, significantly here, (iii)(a)—"The possession of controlled dangerous substances." When that possession is not of a minimal gram or two but of 213.6 grams, this factor alone might well argue in favor of seizure and recommended forfeiture, notwithstanding the total absence of the commercial aspect to the violation.

If, indeed, the judge's determination had been based upon a due process review (and we are not at all certain that it

was), an even more obvious flaw would have been the failure to look at the standards of subsection (f) in their totality. Subsection (f)(1), already quoted, sets forth affirmative circumstances when a seizure and a recommendation for forfeiture are mandated. Subsection (f)(2) sets forth negative circumstances when a seizure and a recommendation of forfeiture are forbidden. That part of the subsection reads:

"(2) A motor vehicle used in violation of this subtitle shall not be seized and forfeiture shall not be recommended to the State's attorney when:

(i) The motor vehicle is being used by a member of the family other than the registered owner and controlled dangerous substances or paraphernalia are located therein in a quantity insufficient to suggest a sale is contemplated, and where no sale was made or attempted, and the registered owner neither knew nor should have known that such material was in the motor vehicle;

(ii) An innocent registered owner lends his motor vehicle to another and the latter or someone invited into the motor vehicle by such person causes controlled dangerous substances or paraphernalia to be brought into the vehicle without the knowledge of the owner;

(iii) The motor vehicle falls within the provisions of § 297(a)(4)(i) or (ii)."

Subsection (f)(1) cannot be read except in conjunction with subsection (f)(2). The legislative scheme of the entire subsection (f) is to provide a list of clear "do's"; a list of clear "don't's" [4]; and, implicitly, a residual list of "maybe's." It

---

**4.** The question naturally arises as to what recourse the owner of the vehicle might have if an officer should seize the vehicle and recommend forfeiture to the State's Attorney in flagrant contravention of the list of clear "don't's" spelled out by subsection (f)(2). The answer is twofold.

In the first place, the legislative scheme contemplates two levels of review within the executive branch of government: first, by the chief law enforcement officer of the police department involved; and, secondly, by the State's Attorney.

The question then might become, "But, what redress would be available if the State's Attorney and the chief law enforcement officer, as well as the initial seizing officer, all flagrantly disregard the list of clear "don't's" spelled out by subsection (f)(2)?" The back-up answer is that the provisions of subsection (a)(4)(i), (ii), and (iii), providing the substantive standards for the forfeiture hearing itself, would preclude forfeiture under such circumstances.

There is a parallel between the negative guidelines of subsection (f)(2), directed to the seizing officer, and the negative criteria of subsection (a)(4), directed to the judge at the forfeiture hearing. The prohibitions on the ultimate forfeiture and on the initial seizure, respectively, duplicate each other, except that there is a certain inverse proportion in their phraseologies. Subsection (a)(4), setting out when vehicles and other conveyances "shall be subject to forfeiture," lists three specific exceptions to the forfeiture provision. Subsection (f)(2) lists three specific situations when a motor vehicle "shall not be seized." Two of the exceptions to the forfeiture provision are set forth in subsection (a)(4)(i) and (ii):

"(i) No conveyance used by any person as a common carrier or vehicle for hire in the transaction of business as a common carrier or vehicle for hire shall be seized or forfeited under this subheading unless it appears that the owner or other person in charge of the conveyance was a consenting party or privy to a violation of this subheading;

(ii) No conveyance shall be forfeited under the provisions of this section by reason of any act or omission established by the owner thereof to have been committed or omitted by any person other than such owner while such conveyance was unlawfully in the possession of a person other than the owner in violation of the criminal laws of the United States, or of any state; ..."

Their counterpart under the guidelines to the seizing officer is (f)(2)(iii), which provides that the motor vehicle "shall not be seized and forfeiture shall not be recommended to the State's attorney when":

"(iii) The motor vehicle falls within the provisions of § 297(a)(4)(i) or (ii)."

Similarly, the two other situations where the officer is told that a motor vehicle "shall not be seized" are spelled out by subsection (f)(2)(i) and (ii):

"(i) The motor vehicle is being used by a member of the family other than the registered owner and controlled dangerous substances or paraphernalia are located therein in a quantity insufficient to suggest a sale is contemplated, and where no sale was made or attempted, and the registered owner neither knew nor should have known that such material was in the motor vehicle;

(ii) An innocent registered owner lends his motor vehicle to another and the latter or someone invited into the motor vehicle by such person causes controlled dangerous substances or paraphernalia to be brought into the vehicle without the knowledge of the owner."

Their counterpart, under the exceptions to the substantive forfeiture law, is subsection (a)(4)(iii):

seems clear that the Legislature, through its guidelines, is saying to the police department, "Where a commercial aspect is indicated, don't even contemplate forbearing to recommend forfeiture. Where, on the other hand, the true owner of the vehicle appears innocent of the use to which his car was put, don't press forward with forfeiture. In between these two polar positions, use your own judgment."

If we were making a *de novo* determination as to the propriety of Officer Hicks's initial action (and we firmly believe that neither we nor any other judges are so empowered), and taking the best scenario from the appellee's point of view (that 213.6 grams of marijuana do not indicate an intent to sell), we would have to conclude that the standards tell us nothing one way or the other. If we were faced with a situation where the owner of an automobile, with no criminal record, was knowingly using his automobile for the possession and consumption of contraband marijuana, we would be faced with a situation where the standards neither mandate seizure and recommendation of forfeiture nor forbid them. Where we are not given a clear command to act, are we precluded from acting? Or is it the case that if we are not clearly forbidden to act, we are permitted to act?

None of the three situations spelled out by subsection (f)(2), arguing against seizure and recommendation of forfeiture, applied in the circumstances of this case.[5] That

---

"(iii) No conveyance shall be forfeited under the provisions of this section to the extent of the interest of any owner of the conveyance who neither knew nor should have known that the conveyance was used or was to be used in violation of this subtitle."
It is not necessary "to second-guess" the executive branch under the provisions of (f)(2) when the establishment of the same facts argue against the ultimate forfeiture itself under the substantive provisions of (a)(4)(i), (ii), and (iii).

5. Indeed, the very notion that the absence of evidence of an actual or intended narcotics sale precludes either the ultimate forfeiture or the initial seizure is absolutely belied by the provisions of subsection (f)(2)(i). That subsection provides that even "where no sale was made or attempted," or where the possessed drugs were "in a quantity

would clearly suggest that the actions taken were not inappropriate.

Our bottom-line reading of the trial transcript before us, however, persuades us that the trial judge's decision was based upon the substantive merits of the forfeiture law and not upon any arguable review of antecedent due process.

It but remains to be noted that we are not unmindful of *State v. One 1976 Dodge Motor Vehicle*, 65 Md.App. 482, 501 A.2d 103 (1985). We do not read it as being necessarily in conflict with anything decided today. To the extent to which anything in that decision is incompatible with what we decide today, however, such part of that decision is expressly disavowed.

ORDER REVERSED; CASE REMANDED FOR PASSAGE OF AN ORDER CONSISTENT WITH THE VIEWS HEREIN EXPRESSED; COSTS TO BE PAID BY LAURA BLASETTI.

---

insufficient to suggest a sale is contemplated," the seizure of the vehicle will even then be inappropriate only under the additional circumstance that the vehicle was "being used by a member of the family other than the registered owner" and "the registered owner neither knew nor should have known that such material was in the motor vehicle."

By necessary implication, where an actual or intended commercial transaction is indicated, even the ignorance of the registered owner will not exempt the vehicle from forfeiture. Conversely, where mere possession, in contrast to actual or contemplated sale, is involved, the fact that "the registered owner [either] knew [or] should have known that such material was in the motor vehicle" will subject the vehicle to seizure and ultimate forfeiture. If mere possession by a family member with knowledge of the registered owner is enough to legitimate seizure and forfeiture, *a fortiori*, such possession by the registered owner herself would justify the seizure and forfeiture.