639 A.2d 641

**STATE of Maryland to the Use of the FREDERICK CITY POLICE DEPARTMENT**

v.

**ONE 1988 TOYOTA PICK-UP TRUCK VIN. JT4RN63A5J0211499.**

No. 88, Sept. Term, 1993.

Court of Appeals of Maryland.

March 15, 1994.

Reconsideration Denied May 10, 1994.

N. Lynn Tillery, City Atty. (Lawrence A. Dorsey, Jr., Arthur M. Kravetz, Office of the State's Atty. for Frederick County, on brief), Frederick, for appellant.

William H. Poffenbarger, Frederick, for appellee.

Argued before MURPHY, C.J., RODOWSKY, McAULIFFE,* CHASANOW, KARWACKI, BELL, and CHARLES E. ORTH, Jr., Judge of the Court of Appeals (Retired, Specially Assigned), JJ.

MURPHY, Chief Judge.

This case involves Maryland's forfeiture statute, codified as Maryland Code (1957, 1992 Repl.Vol., 1993 Cum.Supp.) Art. 27, § 297.[1] In its original form, as enacted by ch. 403 of the Acts of 1970, and as it now provides, § 297(b) states in part:

"(b) The following shall be subject to forfeiture and no property right shall exist in them:

(1) All controlled dangerous substances which have been manufactured, distributed, dispensed, acquired, or possessed in violation of the provisions of this subheading;

(2) All raw materials, products and equipment of any kind which are used, or intended for use, in manufacturing, compounding, processing, delivering, importing, or exporting any controlled dangerous substance in violation of the provisions of this subheading;

(3) All property which is used, or intended for use, as a container for property described in paragraph (1) or (2) of this subsection;

(4) All conveyances including aircraft, vehicles or vessels, which are used, or *intended for use*, to transport, or in any manner to facilitate the transportation, sale, receipt, posses-

---

* McAuliffe, J., now retired, participated in the hearing and conference of this case while an active member of this Court; after being recalled pursuant to the Constitution, Article IV, Section 3A, he also participated in the decision.

1. All subsequent references to code sections are to Article 27 of the Maryland Code unless otherwise indicated.

sion, or concealment of property described in paragraph (1) or (2) of this subsection ..." (emphasis added).

Section 297(b)(4)(i) and (ii) exempts the seizure or forfeiture of certain commercially used conveyances unless the owner or other person in charge of the conveyance consented or was privy to a violation of the statute, and § 297(c) expressly prohibits the forfeiture of property if the owner establishes that the violation was done without the owner's actual knowledge.

Section 297 was substantially amended by ch. 659 of the Acts of 1972. According to its title, the purpose of ch. 659 was "to provide certain guidelines and procedures for the seizure and forfeiture of motor vehicles used in violation of [the subtitle captioned *Health–Controlled Dangerous Substances* ]." The 1972 amendment added a number of new subsections to § 297, one of which, formerly designated as (f), is now designated as subsection (i); it reads in its current form, in pertinent part, as follows:

"(i) In exercising the authority to seize motor vehicles pursuant to this section the following standards shall be utilized:

(1) A motor vehicle used in violation of this section shall be seized and forfeiture recommended to the forfeiting authority when:

(i) Controlled dangerous substances in any quantity are sold or attempted to be sold in violation of this subtitle;

(ii) Although the violator has not sold or attempted to sell controlled dangerous substances in violation of this subtitle, an amount of such substances or paraphernalia is located which would reasonably indicate that sale is contemplated by the violator; or

(iii) The total circumstances of the case dictate that seizure and forfeiture is justified; these circumstances would include such factors as the following:

1. The possession of controlled dangerous substances;

2. An extensive criminal record of the violator;

3. A previous conviction of the violator for a controlled dangerous substances violation;

4. Corroborated information is developed indicating that the violator is or was recently a seller, or frequently associates with individuals known to be distributors of illegal controlled dangerous substances or paraphernalia;

5. Circumstances of the arrest; or

6. The manner in which the vehicle was being used."

Following these provisions of § 297(i) is subparagraph (2) which directs that a motor vehicle used in violation of the subheading shall not be seized (a) when the vehicle is being used by a member of the family other than the registered owner and controlled dangerous substances ("CDS") or drug paraphernalia are located therein in a quantity insufficient to suggest that a sale is contemplated, and where no sale was made or attempted, and the registered owner neither knew nor should have known that such material was in the vehicle; (b) when an innocent registered owner lends the vehicle to another and the latter or someone invited into the vehicle by such person causes CDS or drug paraphernalia to be brought into the vehicle without the owner's knowledge; or (c) the vehicle falls within the provisions of § 297(b)(4)(i) or (ii), *supra.*

Section 297(i)(3) was also added to the statute by the 1972 amendment; it provides that forfeiture shall be recommended "only after the chief law enforcement officer of the police department ... that seized the motor vehicle has determined from the records of the Motor Vehicle Administration the names and addresses of all registered owners and secured parties." This subsection further provides that forfeiture can only be recommended after the chief law enforcement officer "has personally reviewed the facts and circumstances of the seizure and has personally determined, *according to the above guidelines,* that forfeiture is warranted and so represents in writing to the appropriate forfeiting authority." (emphasis added).

Subsection 297(j), as it now reads, provides that "[i]f the forfeiting authority determines independent of the decision of the police department ... that seized the motor vehicle" that it falls within the exemptions specified in § 297(i)(2), or that the standards to be utilized pursuant to subsection (i)(1) of § 297 were not met, the forfeiting authority shall surrender the vehicle upon request to the owner.[2]

What is now § 297(k) was added to the statute by the 1972 amendment as subsections (q) and (r); it is thereby provided that "[i]f, after a full hearing," the court determines that the property should not be forfeited, it shall order its release, but if it determines that forfeiture is proper, the court shall order that the property be forfeited.

In light of these provisions, and particularly subsections 297(b)(4) and 297(i), the question before us is whether a motor vehicle, used by an individual in an attempt to purchase illicit drugs, is subject to seizure and forfeiture in the circumstances of this case.

I

In November of 1992, members of the Frederick City Police Department and other area law enforcement agencies engaged in a street level undercover drug operation in Frederick, Maryland. The purpose of this operation was to arrest individuals who attempted to buy a controlled dangerous substance, crack cocaine, from undercover police officers. Because it is known as an area where considerable drug activity takes place, the police selected the Brookside Apartments in Frederick to conduct the operation.

On November 6, 1992, two undercover police officers were standing in the entrance way of building number 1105 of Brookside Apartments. At approximately 7:25 p.m., Mark

---

**2.** Section 297(a)(5)(i) defines "Forfeiting authority" to mean "the office or person designated ... by agreement between the State's Attorney for a county and the chief executive officer of the governing body having jurisdiction over the assets subject to forfeiture."

Allen Willard approached the officers and asked "Can I get a forty?" This language is commonly used by individuals engaged in the illegal drug trade to signify an offer to purchase $40.00 worth of crack cocaine. One of the police officers answered in the affirmative and walked with Willard under the stairwell of the building. The officer then displayed three individually packaged "rocks" of what purported to be crack cocaine. Willard selected two of the "rocks," handed the undercover officer $40.00, and left the area. The price of $20.00 per "rock" was consistent with the price of crack cocaine in Frederick in November of 1992.

Unknown to Willard, the substance that he bought from the officer was not crack cocaine; rather, it was a substance specially manufactured by a local law enforcement chemist for the undercover drug operation. Although the size, shape, color, texture, and packaging of the substance was substantially identical to crack cocaine, the substance was in fact comprised solely of a non-controlled substance ("non-CDS").

After the transaction, the police observed Willard enter a 1988 Toyota Pick–Up Truck. As he began to drive away, members of the arrest team stopped the vehicle and placed Willard under arrest. A search incident to the arrest uncovered the two "rocks" of non-CDS which Willard had just purchased; no CDS or drug paraphernalia was found in the vehicle.[3]

After the arrest, the police seized Willard's vehicle. Consistent with the provisions of § 297(i), Frederick Chief of Police Raffensberger thereafter wrote to the State's Attorney, send-

---

**3.** Willard was charged criminally under Article 27, § 287B(b) with possessing a noncontrolled substance believed by him to be a controlled dangerous substance. That statute provides:

"Except as authorized by this subheading, it is unlawful for any person to possess or purchase a noncontrolled substance that the person reasonably believes to be a controlled dangerous substance."

On January 14, 1993, Willard pleaded guilty to that offense in the District Court of Maryland sitting in Frederick County. He received probation before judgment, a fine, one year of unsupervised probation, and was ordered to pay court costs.

ing him a copy of the police forfeiture report and related documents concerning Willard's arrest and the seizure of his vehicle. Raffensberger's letter stated that "[t]he facts and circumstances" of the seizure had been reviewed by him and he determined that forfeiture is warranted under § 297(i)(1)(iii). Raffensberger therefore requested that proceedings be instituted to forfeit the vehicle. The State's Attorney, having made the requisite determination "independent of the decision of the police department," advised the Motor Vehicle Administration of his intention to initiate forfeiture proceedings and sought to ascertain, as required by the statute, whether the vehicle was subject to any liens or security interests. Subsequently, based upon the recovery of the two "rocks" of non-CDS found in Willard's vehicle, the State's Attorney for Frederick County filed a petition in the Circuit Court for Frederick County for the forfeiture of Willard's 1988 Toyota Pick–Up Truck.

II

At the trial of the forfeiture proceeding, the facts were stipulated, as heretofore outlined. The State's Attorney relied solely upon § 297(b)(4) which proscribed the use of a motor vehicle, or the intent to use the motor vehicle, to transport or in any manner to facilitate the "possession" of a controlled dangerous substance. He argued that the evidence disclosed that Willard intended to use his vehicle to purchase and transport CDS, thereby facilitating his possession of the substance, and that under the statute it made no difference that what Willard thought was cocaine was non-CDS.

Willard maintained that nothing in § 297 authorized forfeiture of his vehicle since the substance which he transported was non-CDS, even though he believed that it was cocaine. Specifically, he urged that had the legislature intended that § 297(b)(4) permitted forfeiture in these circumstances, it would have expressly included non-CDS substances within the ambit of the statute. Pointing to the requirements of § 297(i) and the recommendation for forfeiture, Willard contended that this subsection sets forth standards to be utilized in exercising

the authority to seize motor vehicles, and that these standards did not encompass possession of non-CDS. He argued that none of the factors to be considered under § 297(i) covered non-CDS and that because this subsection singularly addressed motor vehicle forfeitures, it was controlling. He said that his intention to transport could only be of the substance that he actually purchased and because it was not CDS his vehicle could not be seized and forfeited.

The trial court (Rollins, J.) held, without any reference to § 297(i), that nothing in § 297 specifically provided for forfeiture when non-CDS was possessed or transported in a vehicle. Accordingly, the court concluded that forfeiture was not appropriate in the circumstances, and it ordered that the vehicle be released to Willard. The State's Attorney appealed on behalf of the Frederick City Police Department. We granted certiorari prior to consideration of the appeal by the intermediate appellate court to decide the important issue presented in the case. 332 Md. 245, 630 A.2d 1155.

### III

It was argued before us, as it was at the forfeiture trial below, that a motor vehicle which is intended for use in transporting or in any manner facilitating the transportation, sale, receipt, possession, or concealment of CDS is subject to forfeiture under § 297(b), even when that vehicle transports non-CDS purchased under the guise of being CDS. In so contending, reliance was placed upon several federal cases that have so construed the federal forfeiture statute (21 U.S.C.A. § 881 (West 1989 & Supp.1993)), which contains provisions virtually identical to § 297(b); these cases hold that a conveyance is forfeitable when it is *intended to be used* to facilitate the transportation, sale, receipt, possession, or concealment of CDS, even if CDS is not actually present in the conveyance. *See, e.g., United States v. One 1980 Bertram 58' Motor Yacht,* 876 F.2d 884 (11th Cir.1989); *United States v. $64,000.00 in U.S. Currency,* 722 F.2d 239 (5th Cir.1984); *United States v. One 1979 Porsche Coupe,* 709 F.2d 1424 (11th

Cir.1983); *United States v. One 1980 Cadillac Eldorado,* 705 F.2d 862 (6th Cir.1983).

Willard focused his appellate argument before us almost entirely on the provisions of § 297(i). He maintained that Police Chief Raffensberger did not comply with the provisions of this section and made no independent determination as to why the Willard vehicle should be recommended for forfeiture. He argued that the provisions of § 297(i) were controlling and that they were totally ignored by the State's Attorney. He urged that the recommendation for forfeiture was improperly predicated solely on the general provisions for seizure of property set forth in § 297(b). In this regard, Willard suggested that the more specific provisions of § 297(i) governed the seizure and the forfeiture of his vehicle, rather than the more general provisions of § 297(b)(4); and that nothing in the provisions of § 297(i) authorized vehicle forfeitures where the only substance transported was non-CDS.

## IV

In *State v. One 1967 Ford Mustang,* 266 Md. 275, 292 A.2d 64 (1972), decided prior to the effective date of what is now § 297(i), we recognized that under § 297(b) possession alone of CDS is sufficient to justify the seizure of a motor vehicle, and that "[o]nce the basis of forfeiture under § 297 is established . . ., the remedy is prescribed by law—loss of the seized vehicle." 266 Md. at 277, 292 A.2d 64. We said that "[i]f the Legislature had desired to make this forfeiture discretionary, it could have so provided." *Id.* at 278, 292 A.2d 64. We further said that under § 297 "the duties and powers of the courts are narrowly limited" and that "[o]nce the seizing authority decides to seek forfeiture, the court's only responsibilities are to require proof that the vehicle seized was 'used, or intended for use, to transport, or in any manner to facilitate the transportation, sale, receipt, possession, or concealment of [controlled dangerous substances].' " *Id.* at 278, 292 A.2d 64. We explained that once it was determined that no statutory exceptions to forfeiture were applicable, and that due process requirements had been satisfied, "requests for remission are

best directed to the Governor," since under Art. II, § 20 of the Maryland Constitution, any discretion to remit forfeitures is vested in the Governor. *Id.* at 278 n. 2, 292 A.2d 64.

While fully cognizant of the fact that forfeitures under § 297 could produce harsh results, we emphasized that the legislative purpose was to curtail drug traffic in Maryland and discourage such a blight from continuing in the future. *Id.* at 278–79, 292 A.2d 64. We concluded by stating that we could find no cases, state or federal, holding that "in the absence of statutory permission, discretion is vested in the judiciary to deny forfeiture." *Id.* at 279, 292 A.2d 64. We took note, however, of the addition of what is now subsection (i) to § 297, stating that it was enacted subsequent to the forfeiture involved in *One 1967 Ford Mustang* and therefore was not implicated in the case. We nevertheless characterized the amendment to § 297 as "provid[ing] guidelines for the exercise of discretion *by the seizing authority* in deciding whether to recommend forfeiture to the State's Attorney." *Id.* at 278, n. 3, 292 A.2d 64 (emphasis added).

In *Pr. George's Co. v. One 1969 Opel,* 267 Md. 491, 298 A.2d 168 (1973), we reiterated what we said in *One 1967 Ford Mustang,* namely that trial judges lack the discretion to order the return of vehicles seized for violation of the provisions of § 297(b). We recognized that by the enactment of ch. 659 of the Acts of 1972, which added subsection (i) to § 297, the legislature "spelled out in some detail standards, guidelines and methods of procedure to be applied and followed by the authorities in respect of the forfeiture of motor vehicles under § 297." *One 1969 Opel,* 267 Md. at 499–500, 298 A.2d 168.

While we have never had occasion to specifically address the interaction of subsections (b) and (i) of § 297, the Court of Special Appeals has confronted this very issue. *See State v. One 1989 Harley–Davidson,* 90 Md.App. 445, 601 A.2d 1119, *cert. granted,* 327 Md. 129, 607 A.2d 947, *appeal dismissed per stipulation,* 327 Md. 417, 609 A.2d 1193 (1992); *State v. One 1985 Ford,* 72 Md.App. 144, 527 A.2d 1311 (1987); *State v. 1982 Plymouth,* 67 Md.App. 310, 507 A.2d 633 (1986).

In *State v. 1982 Plymouth, supra,* a motor vehicle was used for the possession and concealment of marijuana and forfeiture was sought. The issue before the court was whether § 297(i) constituted "a modification, by way of limitation," on § 297(b)(4)'s forfeiture conditions, or whether § 297(i) was "rather a set of 'guidelines' to the police to assist them in deciding when to seize a vehicle and to recommend forfeiture to the State's Attorney." 67 Md.App. at 312, 507 A.2d 633. The court concluded "the latter to be the case" and posed the further question of "what standard of review, if any, the judge at a forfeiture proceeding shall employ to determine whether the policeman properly followed the guidelines provided by [§ 297(i) ]." *Id.* In ordering forfeiture, the court focused solely upon § 297(b)(4), holding that it was not necessary that other conditions set forth in subsection (i) be present. Section 297(b)(4), the court said, "covers the waterfront" as the overall scheme of § 297 makes clear that the only conditions for forfeiture are those contained in § 297(b)(1) through (4). *Id.* at 314, 507 A.2d 633. As to this, the court held that the use of a vehicle for possession of drugs standing alone is sufficient for forfeiture. *Id.*

Writing for the Court of Special Appeals in *1982 Plymouth,* Judge Moylan reviewed a number of our motor vehicle forfeiture cases decided between 1971 and 1973. While strictly applying the provisions of § 297(b), none of our cases involved the subsequently enacted provisions of § 297(i). In undertaking to ascertain the legislative purpose in enacting § 297(i), i.e., whether it was intended as "an additional set of preconditions for forfeiture," the intermediate appellate court noted that three standards were contained in the subsection, none of which dealt in the court's opinion "in any way with the ultimate forfeiture itself." *Id.* at 319, 507 A.2d 633. These standards, the court said, referred only "to the antecedent steps of (1) seizing the vehicle in the first instance and (2) recommending forfeiture to the State's Attorney." *Id.* As to these, the court said they were "directed to police officials" and were, as we observed in *One 1967 Ford Mustang, supra,* 266 Md. at 278, n. 3, 292 A.2d 64, only guidelines to be

exercised by "the seizing authority" in deciding whether to recommend forfeiture to the State's Attorney. *1982 Plymouth*, 67 Md.App. at 319, 507 A.2d 633. Accordingly, the intermediate appellate court explained that these "clearly are not guidelines for the judge" since the judge is not "the seizing authority." *Id.* Moreover, the court observed that, under the statute, it is not the judge who will decide whether to recommend forfeiture to the State's Attorney, nor is the recommending function a judicial decision, either in the first instance or by way of *de novo* determination. *Id.* The "overall scheme" of the 1972 amendments to § 297, according to the court, was as follows:

"After providing some guidelines for when a policeman should seize a vehicle and recommend its forfeiture and some guidelines for when a policeman should not seize a vehicle or recommend its forfeiture, the statute provides safeguards upon the exercise of that discretion by establishing two levels of review within the executive branch of government. After setting out both the affirmative and negative standards themselves ... [the 1972 amendment] goes on to provide an initial review by 'the chief law-enforcement officer' of the concerned police department:

" '(3) Forfeiture of the motor vehicle used in violation of this subtitle shall be recommended to the State's Attorney only after the chief law-enforcement officer of the police department, bureau, or force that seized the motor vehicle has determined from the records of the Motor Vehicle Administration the names and addresses of all registered owners and secured parties as defined in the Code, has personally reviewed the facts and circumstances of the seizure and has personally determined, according to the above guidelines, that forfeiture is warranted and so represents in writing to the appropriate State's attorney.'

[Subsection (j) ] deal[s] with the power of the State's Attorney to review the decision made by the police department, to follow it, or to override it if the State's Attorney deems that course appropriate.

"The statutory scheme does not contemplate any second guessing or *de novo* determination by the judge of 1) the policeman's decision to seize and to recommend forfeiture, 2) the chief law enforcement officer's decision to go forward with the forfeiture recommendation in writing, or 3) the State's Attorney's decision to petition for forfeiture. The petitioning process is, in its most fundamental nature, the business of the executive, not the judicial, branch of government."

*Id.* at 319–320, 507 A.2d 633.

In *State v. One 1985 Ford, supra,* a case also involving the forfeiture of a motor vehicle for possession of marijuana, the Court of Special Appeals said that in terms of the ultimate forfeiture hearing, "the merits of the forfeiture issue are to be controlled by the provisions of [§ 297(b) ]." 72 Md.App. at 146, 527 A.2d 1311. Specifically, it said that "once the illicit use of the vehicle is shown, the vehicle is presumptively subject to forfeiture and the burden of proof is upon the owner to demonstrate entitlement to an exemption from that presumptive forfeiture." *Id.* at 147, 527 A.2d 1311. The court acknowledged that to forfeit a motor vehicle for possession of CDS where no commercial aspect of the drug traffic is involved may seem harsh; it nevertheless reiterated the oft-stated view that the legislature intended it to be harsh. *Id.* at 150–51, 527 A.2d 1311. The court said that the legislative scheme makes clear that "the courts have little option but to apply the law with all its intended vigor." *Id.* at 151, 527 A.2d 1311. As to the application of subsection (i), the court explained that it provides a set of guidelines, not for the judge to apply in determining whether forfeiture is to be ordered, but for the exercise of the seizing authority's discretion in deciding whether to recommend forfeiture to the State's Attorney. *Id.* at 152–53, 527 A.2d 1311. In this regard, the court concluded that "[t]he guidelines for seizure, in any event, are only for the benefit of the executive branch and are not subject to judicial review." *Id.* at 153, 527 A.2d 1311.

## V

The fundamental goal of the courts in interpreting statutory language is to ascertain and effectuate the legislative intent. *GEICO v. Insurance Comm'r,* 332 Md. 124, 131, 630 A.2d 713 (1993); *State v. Crescent Cities Jaycees,* 330 Md. 460, 468, 624 A.2d 955 (1993). In doing so, we read the words of the statute in light of the full context in which they appear, i.e., we endeavor to divine legislative intent from the entire statutory scheme, as opposed to scrutinizing parts of a statute in isolation. *Williams v. State,* 329 Md. 1, 15–16, 616 A.2d 1275 (1992). Consequently, the various subsections of § 297 must be interpreted with reference to one another and harmonized to the extent reasonably possibly. *Farmers & Merchants Bank v. Schlossberg,* 306 Md. 48, 56, 507 A.2d 172 (1986); *Comm'n on Med. Discipline v. Bendler,* 280 Md. 326, 330, 373 A.2d 1232 (1977).

That § 297(b)(4) subjects motor vehicles to seizure and forfeiture for simple possession of CDS is clear from our cases. *See One 1969 Opel, supra; One 1967 Ford Mustang, supra.* Moreover, because the plain language of § 297(b)(4) encompasses an "intent" to use a motor vehicle to facilitate possession and transportation of CDS, we share the view of those federal courts that such an intention to possess CDS, believing it to be CDS, even though it is not, is within the coverage of § 297(b)(4). In this regard, we ascribe to the legislature, in its purpose to deter trafficking in and use of illicit drugs, full recognition that so-called police "stings" regularly make use of "look-alike" CDS substitutes to apprehend violators, as was done in this case. Manifestly, a real danger exists where illicit drugs are actually used by the police in its undercover enforcement activities of the CDS laws. We therefore conclude that the trial judge was wrong in holding that § 297(b)(4) had not been violated by Willard in the circumstances of this case. Indeed, it is crystal clear from the stipulated facts that Willard intended to purchase and possess cocaine and to utilize his motor vehicle to facilitate that goal.

■ Turning to the provisions of § 297(i), we think it clear that the legislature did not intend by the enactment of this subsection to supplant any of the provisions of § 297(b), including subsection (4), as they applied to the seizure and forfeiture of motor vehicles. As we see it, § 297(i) was intended, as its words indicate, to vest *"in the seizing authority"* a measure of discretion, guided by the factors specified in the subsection, in making the determination whether the motor vehicle, which became "subject to forfeiture" under § 297(b)(4), should be recommended for forfeiture. Thus, the precept upon which Willard relies, namely that a specific statutory provision, § 297(i), governs over a general one, § 297(b)(4), *see GEICO, supra,* 332 Md. at 132–33, 630 A.2d 713, has no application in this case where the two provisions are intended to operate independently of one another, although part of one statutory scheme.

■ As was indicated in *1982 Plymouth,* and as we recognized in *One 1967 Ford Mustang,* § 297(i) provides guidelines to the seizing authority in determining whether to "recommend" forfeiture to the State's Attorney. Contrary to Willard's contention, Chief of Police Raffensberger, in accordance with the provisions of § 297(i)(3), did personally review "the facts and circumstances" of the seizure of Willard's vehicle and personally determined according to the guidelines contained in § 297(i), that forfeiture was warranted and he so advised the State's Attorney in writing. This recommendation culminated in the petition for forfeiture filed by the State's Attorney. Nothing more was required of the Chief of Police or the State's Attorney; the subsection does not require a written evaluation or written report weighing the factors contained in § 297(i) as a condition precedent to the institution of a forfeiture proceeding. In recommending forfeiture in this case, the Chief of Police was required by § 297(i)(1)(iii)(1 through 6), and did take into account "the total circumstances of the case" in determining whether "seizure and forfeiture is justified"; those circumstances were (1) whether there was possession of CDS, (2) whether the violator has an extensive criminal record, (3) whether the violator has been previously convicted of a

CDS violation, (4) whether the violator frequently associates with distributors of illegal CDS, (5) the circumstances of the arrest, and (6) the manner in which the vehicle was used.

 The record before us shows that in furtherance of his intended purpose to possess and transport CDS in his motor vehicle, Willard drove into an area known for high drug activity, knowing that he could purchase cocaine. While nothing before us shows that Willard had a criminal record, or that he ever sold drugs, or that the manner in which he used his vehicle for his illegal purpose was other than commonplace, the weighing of these and other factors specified in the subsection, is not for the judiciary but for the police and State's Attorney. Although the statute doesn't contemplate a *de novo* review by the trial judge, or the appellate court, of the judgmental process of the Chief of Police and State's Attorney under § 297(i), even if it did, it could not be judicially found as a matter of law that the decision of the executive branch officials to recommend forfeiture was without a lawful foundation.

 In concluding that the seizure and forfeiture in this case was in accord with the governing provisions of § 297(b)(4), we are mindful that forfeitures are disfavored in law because they are considered harsh extractions, odious, and to be avoided when possible. *See United States Coin & Currency v. Dir.*, 279 Md. 185, 187, 367 A.2d 1243 (1977); *Commercial Credit Corp. v. State*, 258 Md. 192, 199, 265 A.2d 748 (1970). But § 297(b) was plainly intended by the legislature as strong "medicine" in the war against drugs. Indeed it was intended to be harsh in order to be effective. It is, therefore, not a statute which, as Willard suggests, mandates a liberal construction to avoid the imposition of a forfeiture; rather, in view of its clear language and purpose, the statute must be construed presumptively in favor of forfeiture absent the applicability of statutory exceptions. Nothing in § 297(i) vests power in the court, after forfeiture proceedings have been lawfully commenced, to excuse forfeiture where that course of action is not legislatively sanctioned.

*JUDGMENT REVERSED; CASE REMANDED TO THE CIRCUIT COURT FOR FREDERICK COUNTY WITH IN- STRUCTIONS TO ENTER JUDGMENT IN FAVOR OF THE APPELLANT, THEREBY FORFEITING THE SUB- JECT MOTOR VEHICLE TO THE STATE OF MARY- LAND TO THE USE OF THE FREDERICK CITY POLICE DEPARTMENT. COSTS TO BE PAID BY MARK ALLEN WILLARD.*

McAULIFFE, Judge, dissenting, in which CHASANOW and BELL, Judges, join.

I agree with the Court that nothing in Article 27, § 297, Maryland Code (1957, 1992 Repl.Vol.) gives a court the right to exercise its own discretion in determining whether to grant a petition for forfeiture of a motor vehicle. I part company with the Court, however, when it holds that the lower court has no function in determining whether executive branch officials abused their discretion, or acted outside the permissi- ble bounds of the statute, in deciding to seek forfeiture. Specifically, I believe the legislature intended court review of the decision of the forfeiting authority, not to substitute the court's judgment for that of the forfeiting authority, but to determine whether the forfeiting authority abused his or her discretion by seeking forfeiture under circumstances that clearly do not fall within any of the standards or conditions established by the statute. I believe the discretion given the forfeiting authority is broad, and the court would have to approve forfeiture if the record demonstrated any state of facts that would fit within the standards established by the legislature for the forfeiture of a motor vehicle, but that the discretion given to the forfeiting authority is not limitless, and the court is not powerless to correct an abuse of that discre- tion.

I agree with the Court that the trial judge erred in denying the forfeiture on the ground that the material transported in the vehicle was not a controlled dangerous substance. Section 297(b)(4) of Art. 27 makes eligible for forfeiture, subject to limitations thereafter set forth, conveyances of all types "in-

tended for use" in the transportation of controlled dangerous substances, and this defendant intended to transport a controlled dangerous substance in this vehicle. This vehicle passed the threshold test for forfeiture.

The threshold test, however, is just that—an initial test applicable to all conveyances. If a conveyance does not qualify for forfeiture under subsection (b)(4), the inquiry ends and forfeiture is not permitted. If the conveyance is a motor vehicle, however, it must also qualify for forfeiture pursuant to subsection (i) of the § 297. It simply could not be clearer that the legislature, by adding subsection (i) to § 297 intended to impose a separate set of standards with which there would have to be compliance if the conveyance sought to be forfeited was a motor vehicle. The initial language of subsection (i), which introduces the standards that follow, clearly establishes that further limitation:

> (i) In exercising the authority to seize motor vehicles pursuant to this section the following standards shall be utilized....

The use of the words "standards" and "shall" make it clear that the legislature was not simply setting forth criteria that it would prefer the forfeiting authority consider in determining whether to forfeit a vehicle. Rather, the legislature mandated two specific conditions that could be shown to justify forfeiture of a vehicle, and then established a third "wild card" or "totality of circumstances" condition, with guidelines, that would serve to justify such a forfeiture. The introductory language to the three possible conditions that will justify forfeiture of a motor vehicle is clearly limiting. The legislature provided:

> A motor vehicle used in violation of this section shall be seized and forfeiture recommended to forfeiting authority when....

I do not believe there is any disagreement that in this context, "when" means "when, and only when." The first two condi-

tions that follow are clear, and a court will ordinarily have little difficulty in determining whether they have been met:[1]

1. Controlled dangerous substances in any quantity are sold or attempted to be sold in violation of this subtitle; or

2. Although the violator has not sold or attempted to sell controlled dangerous substances in violation of this subtitle, an amount of such substances or paraphernalia is located which would reasonably indicate that sale is contemplated by the violator[.]

No one contends that the State can qualify this vehicle for forfeiture under either of these conditions.

The third condition is decidedly more general. The legislature said forfeiture of a motor vehicle could be accomplished when:

3. The total circumstances of the case dictate that seizure and forfeiture is justified; these circumstances would include such factors as the following:

 a. The possession of controlled dangerous substances;

 b. An extensive criminal record of the violator;

 c. A previous conviction of the violator for a controlled dangerous substances violation;

 d. Corroborated information is developed indicating that the violator is or was recently a seller, or frequently associates with individuals known to be distributors of illegal controlled dangerous substances or paraphernalia;

 e. Circumstances of the arrest; or

 f. The manner in which the vehicle was being used.

Assuming that this third condition is not void for vagueness,[2] it is apparent that the legislature intended by this language to permit forfeiture of a vehicle when the threshold test of subsection (b)(4) was met and in addition one or more of the

---

1. The numbers and letters used here to describe the conditions are not those used in the statute.

2. The defendant does not challenge the statute on this ground.

circumstances declared in this third condition demonstrated the presence of an additional factor of seriousness justifying seizure. It is here that the discretion of the forfeiting authority comes into play. That discretion is, in light of the legislative language, necessarily broad. It is not, however, limitless. By establishing the conditions for forfeiture, and requiring that the forfeiting authority file a petition with the court in order to obtain a forfeiture, the legislature has expressed its intention that the court exercise the limited, but traditional oversight of determining whether the forfeiting authority abused it's discretion.[3] I cannot imagine the legislature acting to carefully circumscribe the power of forfeiture in the case of motor vehicles, as it obviously did in enacting subsection (i) by ch. 659 of the Acts of 1972, only to insert in that same statute language that permitted the forfeiting authority to forfeit a motor vehicle under any other circumstances that seemed appropriate to that authority, without any limit on that discretion or any judicial oversight to curb the possible abuse of that discretion. In subsection (j) of § 297, the legislature commanded that the forfeiting authority make an independent determination of whether the conditions of forfeiture have been met. Subsection (j) provides, in pertinent part, as follows:

> If the forfeiting authority determines independent of the decision of the police department, bureau, or force that seized the motor vehicle that ... the standards to be utilized pursuant to subsection (i)(1) of this section were not met, the forfeiting authority shall surrender the vehicle upon request to the owner.

There is nothing tentative about that language. The legislature obviously did not want a motor vehicle forfeited that did not meet the standards of subsection (i)(1). The forfeiting authority was directed, by use of the mandatory word "shall" to surrender the vehicle if it did not meet the established conditions. Surely this decision is susceptible to judicial over-

---

**3.** A failure to exercise discretion is, by definition, an abuse of discretion, and would also be subject to judicial oversight.

sight under an "abuse of discretion" or "clearly wrong" test; otherwise the subsequent judicial proceeding mandated by the legislature lacks meaning. It is interesting to note that in *State v. One 1976 Dodge*, 65 Md.App. 482, 501 A.2d 103 (1985), *cert. denied*, 305 Md. 599, 505 A.2d 856 (1986), the State argued that

> [w]hen faced with a forfeiture petition under Md.Ann.Code art. 27, § 297 (1982 Repl.Vol. and 1985 Cum.Supp.), a circuit court is empowered to determine only 'whether the police commissioner abused his discretion or was clearly erroneous in recommending forfeiture....'.

I agree with the position taken by the State in that case.

In the instant case, the trial judge indicated to counsel early in the proceedings his belief that forfeiture was not possible when a controlled dangerous substance was not involved. The State asked permission to make a full record for purposes of appeal, and did so by dictating into the record an agreed statement of facts. There is nothing in the agreed statement of facts that would come within a country mile of satisfying any of the three conditions for forfeiture of a motor vehicle established by the legislature. No controlled dangerous substances or paraphernalia were found in the vehicle; there was no evidence the defendant had any prior record, much less an "extensive criminal record"; there was no "corroborated information" that the defendant was recently a seller, or frequently associated with individuals known to be distributors of controlled dangerous substances or paraphernalia; there was no evidence that there was anything unusual about the circumstances of the arrest; and, the manner of use of the vehicle was simply to transport a small quantity of a substance that the driver believed to be a controlled dangerous substance. On this record, there was an abuse of discretion or clear error in determining that the vehicle qualified for forfeiture.

Concededly, the focus of the parties and the court below was on a different issue—the availability of forfeiture when the substance was not a controlled dangerous substance. That question having been resolved, it may be appropriate to

afford the State an opportunity, if it so desires, to offer any evidence it may have to show the presence of any of the aggravating factors set forth by the legislature in the third condition. I would vacate the judgment and remand for further proceedings.

Judge Chasanow and Judge Bell have authorized me to state that they join in the views expressed herein.